### BRUCE v. MOON.

1. EVIDENCE—WRITTEN CONTRACTS.—PAROL TESTIMONY is competent to show the negotiations between parties leading up to the execution of a written contract, provided it does not contradict or vary the terms of the written contract.

2. WILLS—CONTRACTS.—A party making a verbal contract with another to come and live with and support him, in consideration that he would will contractee all his property, and afterwards executing and delivering to contractee a will to that effect, contractee having performed his part, cannot afterwards defeat this contract or will by conveying and assigning his property to another, with notice of such contract and will, and without valuable consideration.

Before TOWNSEND, J., Pickens, April, 1899.   Affirmed.

Action by Hattie Bruce against Jefferson L. Moon.   The referee, C. E. Robinson, filed the following report:

About the 1st day of November, 1889, Alexander H. Moon, now deceased, engaged the plaintiff to live with him, and to perform such duties as were incumbent upon a house-keeper and domestic servant, agreeing that for her services and work he would bind himself by writings to give her a home with him while he lived, and also give her everything he possessed at the time of his death.   In pursuance of said agreement the plaintiff gave up her home where she was then living, and moved all her effects to the said Alexander H. Moon's, and entered upon the discharge of her duties.   That soon after she moved to the said Alexander H. Moon's, to wit: on the 26th day of November, 1889, in pursuance of the agreement aforesaid, the said Alexander H. Moon executed his last will and testament and delivered the same to the plaintiff, as the performance of the agreement on his part previously made with the plaintiff.   In the said will, among other things, is devised as follows: "To Hattie Bruce all of the estate of lands and personal property that I may die pos-sessed of and monies on hand at my death," with a proviso. This will was retained in the possession of the plaintiff until she delivered it to the probate judge after the death of the said Alexander H. Moon, and was the consummation of the agreement between them.

That on the 14th day of January, 1896, the said A. H. Moon executed and delivered his deed to J. L. Moon for the tract of land described in the complaint, and also a bill of sale for all the personal property he then owned, the considera-tion being the support and maintenance of the said A. H. Moon during his lifetime, which was truly and faithfully performed.   That on the 26th day of April, 1898, the said A. H. Moon died, and at the time of his death was possessed of no property, so far as the evidence discloses, having previ-ously conveyed all he owned to the said J. L. Moon.

I conclude, therefore, first, that the transaction between
A. H. Moon and J. L. Moon, whereby A. H. Moon conveyed
all his property to J. L. Moon, was perfectly legitimate, and
was not a fraud upon the rights of the plaintiff; second, that
the plaintiff is entitled, under the terms of said will, to all the
property A. H. Moon owned at the time of his death, but
that said A. H. Moon did not own the land or personal prop-
erty in controversy at his death, and the plaintiff is not en-
titled to any part of the same.

The Circuit Judge says : "After hearing argument of coun-
sel, and a careful consideration of pleadings, evidence and
said exceptions, I have come to the conclusion that the plain-
tiff is entitled to the relief she seeks in her complaint.   Upon
the hearing before the referee, a good deal of the evidence
offered on both sides was objected to.   Considering first the
exceptions on the part of the defendant, I sustain his third
exception; and, in reaching my conclusions herein, I have
wholly discarded all of the evidence given by plaintiff as a
witness in her own behalf, with reference to transactions and
communications between herself and the said A. H. Moon,
deceased.   Defendant's first and second exceptions are also
directed to the improper admission of evidence, and in sub-
stance urge that the referee erred in ruling as competent any
parol evidence as to the agreement or leading up thereto.   In
the light of the complaint and answers, I cannot sustain these
two exceptions.   The plaintiff sets forth her cause of action
in a complaint containing sixteen distinct sections, all of
which, she alleges, constitute her cause of action.   The de-
fendant in his answer takes no exception to the manner of
her stating her cause of action, but denies all these allega-
tions, and sets up an affirmative defense.   I hold, therefore,
that such of this evidence as is responsive to the pleadings is
competent, and I have considered no other.   I think, more-
over, that there is other evidence, not objectionable, entirely
sufficient to sustain the 1st, 2d, 3d and 4th sections of the
referee's report, and I adopt the findings of the referee in

these sections as part of this decree. Defendant's other exceptions are overruled.

The exceptions of plaintiff principally attack the referee's conclusions of law. I cannot agree with the referee, that the transaction between A. H. Moon and J. L. Moon was perfectly legitimate, and was not a fraud upon the rights of the plaintiff, nor in violation of the agreement between A. H. Moon and the plaintiff, as set forth in their written agreement. This would perhaps be true if the defendant had been an innocent purchaser for value without notice of plaintiff's rights, but the defendant accepted the deeds from A. H. Moon with full knowledge of plaintiff's rights (and he paid no part of the purchase money stated in the deed to be the consideration thereof—these deeds are, therefore, fraudulent, so far as plaintiff is concerned). The referee finally holds that although plaintiff is entitled to all the property A. H. Moon owned at the time of his death, yet he owned nothing, as these deeds were valid, and conveyed all his property to the defendant, J. L. Moon, and that J. L. Moon's title was good. It follows, from what I have already said, that in this the referee was in error. The paper in evidence called a will is, nevertheless, something more. Properly construed, it is a contract, binding upon both parties. It was so considered by them, and delivered by the said A. H. Moon to the plaintiff, to be held by her as the consummation of the agreement between them. It was, in effect, an agreement that if the plaintiff performed her part, she would have all of A. H. Moon's property at his death. The attempt of A. H. Moon, therefore, to avoid this agreement by conveying all his property to his son, the defendant, J. L. Moon, who was fully cognizant of plaintiff's rights, was a palpable fraud on her. These deeds, therefore, being fraudulent, did not convey the title out of A. H. Moon, and he was, therefore, the owner of the property therein described at the time of his death, and that since his death the plaintiff is at least the equitable owner thereof. It follows, therefore, that the exceptions of the plaintiff should be sustained, and it is so ordered.

Up to this point I have had but little trouble in reaching my conclusions. But I am not so clear as to what specific relief plaintiff is entitled to. She claims to be the owner of all the property that A. H. Moon ever owned after the making of the agreement, and that she is entitled to an accounting therefor. I cannot, however, go that far. If A. H. Moon had continued to live with plaintiff up to the time of his death, and it had become necessary to use any portion of his property to supply his necessities, or to support him in comfort, plaintiff could not complain. She would have been entitled to what remained, Moon being restricted to a proper use and prohibited from making a fraudulent disposition of any part thereof. I am satisfied from the evidence that the rental value of the land was entirely sufficient for the proper support of the said A. H. Moon; but as he had some sickness, I will not require the defendant to account for the personal property. It follows from the above, and the plaintiff being the owner of the land since the death of the said A. H. Moon, that she is entitled to rent since that time. It is, therefore, ordered, adjudged and decreed, that the plaintiff is the owner of the tract of land described in the complaint, and is entitled to the possession thereof. It is further ordered, that it be referred to C. E. Robinson, as special referee, to ascertain and report the rental value of said place since the death of said A. H. Moon. It is further ordered, that the deed of A. H. Moon to the defendant, J. L. Moon, of date January 14, 1896, be surrendered by said J. L. Moon to the clerk of this Court to be cancelled."

The defendant appeals.

*Mr. J. P. Carey,* for appellant, cites: *Parol testimony incompetent to prove contract relied on:* 21 S. C., 400; 48 S. C., 86; 22 S. C., 454. *Conveyances to defendant were not in violation of any agreement with plaintiff or in fraud of her rights:* 3 Rich. Eq., 458; 16 S. C., 44; 4 McC., 12.

*Messrs. Blythe & Blythe,* contra, cite: *Parol evidence*

*competent under facts:* 24 S. C., 128. *Evidence not objected to, hence competent:* 53 S. C., 71, 360. *Will made in pursuance of a contract is irrevocable:* DeS., 194; 48 S. C., 86.

March 22, 1900. The opinion of the Court was delivered by

MR. CHIEF JUSTICE McIVER. This action was brought by the plaintiff to enforce the performance of an agreement which she claims to have entered into with one Alexander H. Moon, the father of the defendant, whereby the plaintiff was to live with and take care of the said Alexander H. Moon, in consideration whereof he was to give her all of his property, which the defendant claims under a deed and bill of sale from his father. The case was referred to a referee to take the testimony and report his conclusions thereon, and the testimony so taken is set out in the "Case." All of the testimony was parol, except the will of Alexander H. Moon, the deed and bill of sale made by him to the defendant, and the proceedings for the ejectment of the plaintiff from the land. in question, which will, hereinafter, be more particularly referred to. This parol testimony tended to show that Alexander H. Moon, though a married man, with six children, had been separated from his wife since 1883, was living entirely alone on a small tract of land, containing forty-three acres, more or less—all the land which he owned—having in his possession a small quantity of personal property; that some time in the year 1889, the said A. H. Moon opened negotiations with the plaintiff for the purpose of engaging her to come and live with him and take care of him, he saying that if she would do so he would give her all of his property at his death; that this proposal was accepted by the plaintiff, provided he would enter into writing securing what he proposed to give her; that on or about the 1st of November, 1889, the plaintiff broke up her home and went to live with the said A. H. Moon, taking with her one milk cow, one dry cow, two yearlings, $50 in money, her household furni-

5—57

ture and such provisions as she had on hand—that $50 together with $25, the price of the cow which she sold, being applied to repairs on the house; that she continued to live with said A. H. Moon, taking care of him and working, serving him faithfully and satisfactorily (though there is some conflict in the testimony as to his being satisfied with her services) until the said A. H. Moon left his own home, early in January, 1896, and went to live with his son, the defendant, where he remained until April, 1898, when he died, at the age of 72 years. In the meantime, however, the said A. H. Moon, soon after the plaintiff came to live with him, to wit: on the 26th of November, 1889, executed his will, whereby the testator, after giving pecuniary legacies of one dollar each to his wife and six children, proceeds as follows: "And to Hattie Bruce, all of the estate of lands and personal property that I may die possessed of, and monies on hand at my death: provided, moreover, that the said Hattie Bruce does in every way take care of me, the testator, and provide for me, the testator, in health and in sickness, under the direction of the said testator, if she does well and truly perform this her duty, as set forth in this my last will and testament; if she fails in doing this, this my last will and testament will be null and void and of no effect; if the said Hattie Bruce does conform to this, then at the death of the testator, all the property is hers." A short time after Alexander H. Moon went to live with his son, the defendant, to wit: on the 14th of January, 1896, the said A. H. Moon executed a deed to this said Jefferson L. Moon for the 43 acre tract of land, and on the same day executed a bill of sale to him for all of his personal property—the consideration named in the deed being the sum of $1,200, and that named in the bill of sale being $125. But the defendant in his testimony admits that he never paid any money on account of the consideration named in either deed or bill of sale—saying that he considered that he had paid it all by waiting on his father and taking care of him in health and sickness, for the two years and four months he lived with him just prior to his death

(quite a large compensation for such services rendered by a
son to his aged and helpless father). In addition to this,
defendant admits in his testimony that his father had $83
or $93 in money, when he came to his house, and that he got
from his father a mule worth $15; also a mule ( ?) and har-
ness (probably meaning a buggy and harness) worth $15;
also 50 bushels of corn worth $25; some fodder worth 75
cts. per hundred; 40 bushels of cotton seed worth $4.40; a
cow worth $15; and household furniture worth $20. What
became of all this is not explained in the testimony, but it
must have been disposed of, as defendant claims that his
father died leaving no property of any kind. The notice
which was served upon the plaintiff in the ejectment pro-
ceedings hereinbefore referred to (a copy of which is set out
in the "Case") bears date 28th of January, 1896, very soon
after the said A. H. Moon had executed a deed to the de-
fendant for the 43 acre tract of land, and seems to have been
issued in the names of both A. H. Moon and J. L. Moon;
and recites that the plaintiff had gone into possession of the
said land under a contract with said A. H. Moon to serve
him as a domestic servant, determinable at the will of the
said A. H. Moon, and that she had refused to quit the prem-
ises so occupied, when thereto required by the said A. H.
Moon and the said J. L. Moon, who had "recently purchased
said land from the said Alexander H. Moon, after the termi-
nation of said contract of service or occupancy at will."
There is no testimony whatever of any such contract as that
stated in this notice; and, on the contrary, all the testimony
tends to show that the plaintiff went to the house of A. H.
Moon under an agreement to live with and take care of him,
in consideration whereof she was to have all of his property
at his death. When this notice was served upon the plain-
tiff, she surrendered the premises, because, as she says in her
testimony, she supposed she had no right to the land until
the death of A. H. Moon. The referee made his report (a
copy of which should be incorporated in the report of this
case); to which both parties filed exceptions, and the case

was heard by his Honor Judge Townsend, who rendered his decree, the terms of which need not be stated here, as it should also be embraced in the report of this case.    From this decree the defendant appeals upon the several grounds set out in the record, which, however, it will not be necessary to state here, as the counsel for appellant, in his argument here, says that the points made by his exceptions may be reduced to two inquiries, which he thus states : *"First.* Was there error in admitting as competent in this case parol testimony as to a prior agreement between the plaintiff, Hattie Bruce, and A. H. Moon?    *Second.* Were the conveyances by A. H. Moon to the defendant, Jefferson L. Moon, in violation of any agreement with the plaintiff, Hattie Bruce, and in fraud of her rights ?"

We propose to take up these questions in their order, and first as to the admissibility of the parol testimony, which must be considered in two aspects, at least, so far as the testimony of the plaintiff is concerned.    1st. As to the admissibility of the testimony of the plaintiff as to any transactions or communications between her and A. H. Moon, deceased, which was raised by defendant's third exception to the referee's report.    But as the Circuit Judge in his decree distinctly sustains that exception (whether correctly or not, we are not at liberty to inquire, as there is no exception to that part of the decree), and says that, in reaching his conclusion, he has "wholly discarded all of the evidence given by plaintiff as a witness in her own behalf, with reference to transactions and communications between herself and the said A. H. Moon, deceased," we must likewise disregard so much of the testimony of the plaintiff as relates to any transaction or communication between herself and the said A. H. Moon; but any of her testimony not relating to any such transaction or communication—for example, her testimony as to what she carried with her when she went to live with A. H. Moon—stands upon the same footing as the parol testimony of any other witness not a party to the action.    2d.

As to the admissibility of the parol testimony gene-

rally.   There can be no doubt that the rule is that the terms of a written instrument cannot be contradicted or even varied by parol testimony, and we may also concede that where parties, after verbal negotiations, enter into a written contract, such writing must, as a general rule, be regarded as expressing all the terms of such agreement.  But still we think that the parol testimony in this case, in so far as it did not contradict or vary the terms of the writing—the will—was competent, for it seems to us that the parol testimony, here in question, did not contradict or vary the terms of the agreement referred to in the will, but simply tended to prove the negotiations which led up to the written instrument which was executed—it simply tended to show that the plaintiff was induced to leave her home and go to live with A. H. Moon and take care of him, under a promise from him to give her all of his property at his death; and this he afterwards did, by the terms of his will, which plainly recognized such arrangement.

The second question, which, as counsel for appellant says, is presented in this case, we think may be more precisely stated as follows: Could A. H. Moon, after having entered into an agreement with the plaintiff, that if she would come and live with him and take care of him, he would give her all of his property at his death, and after having executed his will to that effect, and after she had performed her part of the agreement as far as he would permit her to do so, afterward absolutely defeat and destroy the provision made for her in his will in consideration of her services, by conveying to a third person, who had notice of this agreement, all of his property?   This question involved two subordinate inquiries: 1st. Whether A. H. Moon did execute his will in pursuance of and in conformity to the terms of the agreement between him and the plaintiff.   This we think is shown by the will itself; for after certain trifling pecuniary legacies to his wife and children, he, practically, gives all the rest and residue of his estate to the plaintiff, provided she performs all her part of the agreement.   Some

point is made of the use of the words, "all of the estate of lands and personal property *that I may die possessed of, and monies on hand at my death*" (italics ours), as tending to show his intention to reserve the right to dispose of his property before his death. But that is true of every will, which is ambulatory and capable of revocation. A will speaks at the death of the testator, and can only operate upon such property as he may own at the time of his death. Hence the words which we have italicized were useless, as the will would have had the same effect without those words as with them. The second subordinate inquiry is whether the plaintiff faithfully performed her part of the agreement as long as she was permitted to do so by the testator. While there is some conflict of testimony as to this point, it seems to us the decided weight of the testimony shows that she did. The referee made no specific finding upon this point, and the plaintiff excepted to the report of the referee upon the ground of such omission, and that exception, amongst others, was sustained by the Circuit Judge; and the defendant did not except to such holding—his 14th exception— "Because the Circuit Judge erred in ordering that the plaintiff's exceptions be sustained," being manifestly too general. If, therefore, it be true, as we find from the testimony it is, that A. H. Moon and the plaintiff entered into a parol agreement such as is above stated, and that in pursuance of such agreement, the said A. H. Moon executed his will, recognizing such previous parol agreement; and if the plaintiff faithfully performed her part of such agreement, the only remaining question is whether said A. H. Moon could by the conveyance to the defendant, his son, defeat and annul the testamentary provision made for the plaintiff. Both upon principle and authority, we have no doubt that A. H. Moon could not defeat the testamentary provision made for the plaintiff in his will, by the conveyance. To allow A. H. Moon, after having received and enjoyed the consideration upon which his promise to give his property, at his death, to the plaintiff, rested, and after having, in recognition of such

promise, actually executed his will to that effect, to defeat such testamentary provision by this conveyance to his son, would be a palpable fraud on the plaintiff, which a court of equity should not and will not tolerate. The view which we have adopted is fully sustained by the authorities, in our own State as well as elsewhere. While it is undoubtedly true that a person may, within the limitations prescribed by statute which have no application here, dispose of his property, either by deed or will, in any way that he sees proper, yet this right, like all others, may be bargained away by a valid contract. These principles are fully sustained by the cases of *McKeegan* v. *O'Neill,* 22 S. C., 454, and *Fogle* v. *St. Michael's Church,* 48 S. C., 86, and the authorities cited in those cases. In 3 Pars. on Con. (6th edit.), sec. 406, it is said: "It is obvious that an agreement to make a certain disposition of property by last will, is one which, strictly speaking, is not capable of a specific execution—not in the party's lifetime, because any testamentary instrument is, by its nature, revocable; and after his death it is no longer possible to make his last will. Yet it has been held to be within the jurisdiction of equity to do what is equivalent to a specific performance of such an agreement, by requiring those upon whom the legal title has descended to convey the property in accordance with its terms. And the Court will not allow this post mortem remedy to be defeated by any devise or conveyance in the lifetime, inconsistent with the agreement, unless, indeed, rights of purchasers deserving of protection should intervene." For example, purchasers for valuable consideration without notice, a position which, as we shall presently show, the defendant in this case does not occupy. We have, however, found one case—*Bolman* v. *Overall,* 80 Ala., 451, reported, also, in 60 Am. Rep., 107—which is so much like the case now under consideration, and the views therein announced are so well sustained by the reasoning employed and the authorities cited, that we would be well warranted in resting our conclusion upon that decision, rendered by a Court of recognized ability and learning. In that

case, the action was for the specific performance of an agreement to make a will in favor of plaintiffs. The facts were as follows: In March, 1876, a verbal agreement was entered into between the testatrix, Mrs. Lohman, and the plaintiffs, Mrs. Bolman and her two daughters, whereby it was agreed that Mrs. Lohman would leave to the plaintiffs all the property owned by her at her death, if they would come and nurse and take care of her, she being then sick in bed and in a helpless condition. In pursuance of this agreement, Mrs. Lohman executed her will on the 1st December, 1881, and delivered the same to Mrs. Bolman. The plaintiffs faithfully performed their part of the agreement for about seven years—from March, 1876, to February, 1883—until Mrs. Lohman declined further to receive their attentions; and in April, 1883, Mrs. Lohman executed another will, in which she sought to revoke the previous will, and leaving her entire property to other beneficiaries, and died in October, 1886, leaving the will made in 1883 unrevoked. The Court held that the first will was valid, and may be enforced as a contract after testator's death. In delivering the opinion of the Court, Mr. Justice Somerville, in speaking of the first will, uses this language: "It is clearly a will in form, being testamentary in frame and verbiage. But it is also a contract, in essence and fact * * * cases are frequent in which instruments have been construed to be partly testamentary and partly contractual. And when based on a valuable consideration, a paper, in form a will, may, especially when delivered to a party interested, or to another for him, constitute legally, and in fact, an irrevocable contract"—citing *Taylor* v. *Kelly*, 31 Ala., 59; *Kimbrew* v. *Kimbrew*, 55 Ala., 628; Schouler on Wills, sections 452, 455. Again he says: "The purpose of the bill, as we construe it, is not to enforce the parol agreement, in which the deceased agreed to bequeath to complainants all the property she might own at the time of her death, but rather to enforce the modified agreement, as evidenced by the written instrument, purporting to be a will. No question can properly arise, therefore, as to

the influence of the statute of frauds, in view of the fact that real estate is involved in the transaction." Still again: "All the authorities agree that one may, for a valuable consideration, renounce the absolute power to dispose of his estate at pleasure, and bind himself by contract to dispose of his property by will to a particular person, and that such contract may be enforced in the courts of justice after his decease * * *. The validity of such agreements, as remarked by Mr. Freeman, in a recent note on this subject, to the case of *Johnson* v. *Hubbell,* 10 N. J. Eq., 332; s. c., 66 Am. Dec., 773, 784, 'is supported by an unbroken current of authorities, both English and American.'" Again he says: "The principles upon which Courts of Equity undertake to enforce the execution of such agreements is referable to its jurisdiction over the subject of specific performance. It is not claimed, of course, that any Court has the power to compel a person to execute a last will and testament carrying out his agreement to bequeath a legacy, for this can be done only in the lifetime of the testator, and no breach of the agreement can be assumed so long as he lives. And after his death he is no longer capable of doing the thing agreed by him to be done. But the theory on which the Courts proceed is to construe such an agreement, unless void under the statute of frauds, or for other reason, to bind the property of the testator or intestate so far as to fasten a trust on it in favor of the promise, and to enforce such trust against the heirs and personal representatives of the deceased, or others holding under them, charged with notice of the trust." To the same effect, see *Sharkey* v. *McDermott,* 91 Mo., 647, also reported in 60 Am. Rep., 270; *Carmichael* v. *Carmichael,* 72 Mich., 76, also reported in 16 Am. St. Rep., 528, and the notes thereto. But it is said that A. H. Moon complied with his promise to plaintiff by making his will giving her all of the property of which he died seized and possessed. This, as it seems to us, we must say, is a mere play upon words. To say that a person has fulfilled his agreement to give to another all of his property at his death, in consideration of val-

uable services performed, by making his will in accordance with such agreement, and then to turn right around and annul and effectually destroy such testamentary provision by conveying away all of his property to another, leaving nothing whatever upon which the will could operate, would be "keeping the word of promise to the ear and breaking it to the hope." Such a mode of performing an agreement certainly cannot be recognized by a Court of Equity. Besides (quoting again from the case of Bolman *v.* Overall, *supra*): "As said by Lord Camden, in Dufour *v.* Pereira (quoted by Hargrave in his Juridical Arguments, vol. 2, p. 310), there is no difference between one's promising to make a will in such form, and making such will with a promise not to revoke it." We have not deemed it necessary to consider what would be the effect if the defendant could claim the position of purchaser for valuable consideration without notice, for the reason that he makes no such claim—sets up no such defense in his answer—and even if he had made such a claim, it could not be sustained, for two reasons: 1st. Because the testimony shows that the defendant had notice of the arrangement between the plaintiff and his father before he took his deed. 2d. Because he paid no valuable consideration—certainly not for the land, which, under the decree of the Circuit Judge, is the only property involved. He says in his own testimony: "I never paid any money on the consideration mentioned in the deed. I consider I have paid it all by waiting on my father and taking care of him in health and sickness." He does not even pretend to say that there was any agreement or even understanding between himself and his father that the consideration of $1,200 mentioned in the deed should be paid in that way; but simply says that *he considered* that he had paid it all by taking care of his father during the last two years of his life. Such a mode of supporting a plea of purchase for valuable consideration is, to say the least of it, decidedly novel. Besides, the Circuit Judge says in his decree: "I am satisfied from the evidence that the rental value of the land was entirely sufficient for the

proper support of the said A. H. Moon; but as he had some sickness, I will not require the defendant to account for the personal property;" and to this part of the decree neither party has excepted. Now, as the defendant in his testimony admitted that he had received personal property from his father, which, according to his own estimate, was worth nearly $200, and as the undisputed evidence is that the defendant had possession of the land for at least two years preceding his father's death, it seems to us that the Circuit Judge, by relieving the defendant from liability to account for the personal property, and use of the land for two years, has allowed the defendant sufficient compensation for his services to his father; and hence, even if there was any agreement between the father and son, the services being thus paid for cannot constitute any payment on consideration of $1,200 mentioned in the deed. Either of these two reasons would be sufficient to defeat the plea of purchase for valuable consideration without notice, even if such a defense had been set up in the answer.

It is the judgment of this Court, that the judgment of the Circuit Court be affirmed.