GRACE G. DICKINSON, Appellant, *v.* WILLIAM I. SEAMAN, Respondent, Impleaded with Others.

1. CONTRACTS — ANTE-NUPTIAL AGREEMENT BY WHICH HUSBAND AGREED TO MAKE DAUGHTER OF HIS WIFE, BY FORMER MARRIAGE, HIS HEIR AND GIVE HER HIS PROPERTY — CONSTRUCTION AND EFFECT THEREOF. Where, in an ante-nuptial contract, the prospective husband, in consideration of a certain sum to be advanced for use in his business by the prospective wife, agreed to marry her, adopt her daughter by a former marriage and make the latter his heir, also to give her all his property by will, unless he should have a child or children of his own, and in that event to divide his property equally between all the children, herself included, the provision that he should "bequeath and devise all his property" to the daughter must be read in connection with the context that he would adopt her and make her his heir. When thus read, the reasonable construction is that he intended to treat the daughter as his own child and when he died to leave his property to her, or to her and his own children if he had any. It cannot be held from the contract, construed as a whole and in the light of the situation of the parties and their mutual promises to marry, that the parties intended that the husband should create a trust for his wife's daughter or fetter his estate so that he could not use it for any ordinary or reasonable purpose or give a reasonable amount thereof to charity.

2. SAME — ASSIGNMENT OF LIFE INSURANCE POLICY AS A GIFT, NOT A VIOLATION OF SUCH CONTRACT — ACTION TO RECOVER PROCEEDS OF POLICY AFTER DEATH OF THE HUSBAND NOT MAINTAINABLE.   Where the execution of said contract was followed by the marriage of the parties, the payment of the money by the wife to the husband and by his assuming the care and support of her daughter as if she were his own child, and thereafter the husband died leaving a large estate and no children of his own, the daughter cannot maintain an action to recover the proceeds of a life insurance policy, which the husband, before his death, had assigned to certain relatives as a gift, upon the ground that the assignment was a violation of the ante-nuptial agreement and in fraud thereof, where the complaint does not allege facts constituting fraudulent intent or fraud, in fact, and the allegation of fraud as a matter of law is not sustained by the facts alleged, which show, on the contrary, that the gift was not out of proportion to his estate or so unreasonable as to be a violation of the contract.

3. SAME — JUDGMENT IN ANOTHER ACTION DIRECTING SPECIFIC PERFORMANCE OF CONTRACT — INEFFECTUAL IN ACTION TO RECOVER PROCEEDS OF POLICY IN QUESTION.   The fact that the daughter has obtained, in another action, a decree against the executors of her foster father's estate, directing them to specifically perform the contract and adjudging that she is entitled to all his property and estate, subject only to the rights of his widow therein, does not entitle her to the proceeds of the policy in this action.   The policy was property, but it was neither owned or left by the foster father when he died, for by his lawful act it had become the property of others.

*Dickinson* v. *Seaman,* 117 App. Div. 908, affirmed.

(Argued June 12, 1908;   decided October 6, 1908.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered January 17, 1907, affirming a judgment in favor of defendants entered upon a decision of the court at Special Term sustaining a demurrer to the complaint.

The facts alleged by the plaintiff in her complaint are in substance as follows : In 1875 George W. Kidd entered into an ante-nuptial agreement with Anna Estelle Slocum, whereby in consideration of the sum of $40,000 advanced to him by her to be used in the business he was then carrying on, he agreed to marry her and to adopt her daughter, the plaintiff in this action.   As the complaint continues, he also agreed to

make said daughter "his heir and that in case there should be issue of said marriage, he would by will bequeath and devise all his property equally to and among the said child and his other children, and in case there should be no issue of said marriage, then in that case, he would bequeath and devise all his property" to the plaintiff herein. This contract was followed by the marriage of Mr. Kidd and Mrs. Slocum, the surrender by the latter to the former of the possession of the plaintiff, her daughter, and the payment of said sum of $40,000 to him, by the use of which in his business he "accumulated a large fortune, consisting of real and personal property, which he had at the time of and left at his death." "Among such property was a policy of life insurance" for $10,000 on his life, dated December 22, 1873, the premiums on which had all been paid by him. On the 22nd of November, 1897, while said contract was in full force and in due course of performance by his wife, he "attempted by an instrument purporting to be an assignment to transfer" said policy of insurance to "his brothers and sisters and a niece," who are defendants in this action, purely as a gift and without other consideration than mutual love and affection. Said instrument contained a guaranty as to "the validity and sufficiency" thereof and a covenant to warrant and defend the title of the assignees to said policy. The amount of the policy has been paid into court and is now in the hands of the chamberlain of the city of New York, one of the defendants.

After the death of Mr. Kidd and on May 11th, 1905, the plaintiff recovered judgment in the Supreme Court against his executors, the other defendants herein being also parties defendant to that action, requiring them to specifically perform said contract and adjudging that the plaintiff was entitled to all his property and estate, subject only to the right of his wife to dower and under the Statute of Distributions.

The complaint herein contains no allegation that said assignment was made from evil motives or with intent to defraud the plaintiff and fraud is not alleged as a fact in connection therewith, although it is alleged as a conclusion of law that

the assignment " was executed in derogation, in violation and fraudulently as to the contract."

The relief demanded was a judgment that the assignment is a violation of the ante-nuptial contract and void as to the plaintiff; that she recover from the chamberlain the entire proceeds of the policy and that he be enjoined from making payment thereof to any one else.

The defendant William I. Seaman demurred to the complaint upon the ground that it fails to state facts sufficient to constitute a cause of action. The demurrer was sustained by the Supreme Court at Special Term and final judgment was rendered against the plaintiff accordingly, which on appeal to the Appellate Division was unanimously affirmed. A further appeal was then taken by her to this court.

*H. D. Luce* and *Charles C. Dickinson* for appellant. The court at Special Term has decided that the plaintiff, under the terms of the ante-nuptial contract, was simply to become the decedent's " child by adoption and his sole heir and testamentary beneficiary," and " until his death he was absolutely master of his own property." Such was not the contract. (2 Parsons on Cont. [5th ed.] 71 ; 2 Kent's Comm. [14th ed.] 165 ; Pom. Eq. Juris. § 1297 ; *Looke* v. *Hastings*, 2 Vern. 97 ; *Kramer* v. *Kramer*, 98 App. Div. 176 ; *Boeland* v. *Walsh*, 162 N. Y. 104 ; *Todd* v. *Weber*, 95 N. Y. 189 ; *Merritt* v. *Scott*, 6 Ga. 563 ; *Stilley* v. *Folger*, 14 Ohio, 610 ; *Cortledge* v. *Cutliff*, 29 Ga. 758 ; *Smith* v. *Chappell*, 31 Conn. 589 ; *Tarbell* v. *Tarbell*, 10 Allen, 278 ; *Hunter* v. *Bryant*, 2 Wheat. 32.) The ante-nuptial contract having been fully performed on the part of Mrs. Slocum amounts to an actual purchase by her, for the benefit of her daughter, of all of the property which the deceased should accumulate during his lifetime with the aid of this $40,000, and under the decisions a trust was thereby created in favor of this plaintiff to the extent that he could not give it away during his lifetime or by will after his death. (3 Parsons on Cont. [5th ed.] 362 ; 2 Kent's Comm. 165 ; *Matter of Youngs*, 27 Hun, 54 ; 92

N. Y. 235; *Johnston* v. *Spicer*, 107 N. Y. 185; *Brown* v. *Wadsworth*, 168 N. Y. 225; *Postum* v. *Gillespie*, 5 Jones' Eq. 258; *Bank of Greenboro* v. *Chambers*, 30 Gratt. 202.)

*Frederick S. Fisher* and *William H. Wadhams* for respondent. The contract set forth in the first paragraph of the complaint referred to property which decedent George W. Kidd owned at the time of his death only. (*Matter of Kidd*, 188 N. Y. 274; *Roehl* v. *Haumesser*, 114 Ind. 311; *Johnston* v. *Spicer*, 107 N. Y. 185; *Austin* v. *Davis*, 128 Ind. 472; *Phalen* v. *U. S. T. Co.*, 186 N. Y. 178; *Jones* v. *Martin*, 3 Anstr. 822; *Gall* v. *Gall*, 64 Hun, 600.) The assignment was not a testamentary disposition of property, but passed a present right to the policy of insurance. (*Lane* v. *E. L. Ins. Co.*, 102 App. Div. 625; 115 App. Div. 902; *Matson* v. *Abbey*, 70 Hun, 475; 141 N. Y. 179; *Robb* v. *W. & J. College*, 185 N. Y. 485; *Matter of Parsons*, 117 App. Div. 321; *Hurlbut* v. *Hurlbut*, 49 Hun, 189; *Conyne* v. *Jones*, 51 Ill. App. 17; *Grafing* v. *Hailman*, 1 App. Div. 260.)

VANN, J. The complaint does not rest upon actual fraud alleged as matter of fact, but on constructive fraud alleged as a conclusion of law. The theory of the pleader was that the plaintiff, by means of the ante-nuptial contract made between her mother and the decedent, became entitled to all the property of the latter at his death, without any reduction through gifts made in his lifetime; that, in the words of her counsel, "there was no option given to the decedent as to the sum or sums which he might give away," either in his lifetime or by last will and testament and that he held his property as a *quasi* trustee with power to use for the support of himself and family, but with no power to make a donation of any substantial amount to any person, or for any purpose.

This construction of the contract is not required by the words used and it would lead to such absurd results as to show that it was not within the intention of the parties. It would have prevented the decedent from dropping a "ten-dollar bill" in the contribution box as it was passed to him in

church on Sunday; from giving a few dollars to relieve want or assuage pain; from making a Christmas present to a friend, and, regardless of the extent of his estate, from helping to build a church or support a hospital.

What was the contract? The decedent agreed to adopt the plaintiff and make her his heir; to give her all his property by will, unless he should leave a child or children of his own, and in that event to divide his property equally between all the children, herself included.

What was the effect of the contract, construed, as it should be, in the light of the circumstances surrounding the parties when it was made, with reference to the use by the decedent of his property while he lived? The answer to this question is not to be found in his promise to " bequeath and devise all his property " to the plaintiff, read by itself, but read in connection with the context that he would adopt her and make her his heir. When thus read, the reasonable construction is that he intended to treat the plaintiff as his own child and when he died to leave his property to her, or to her and his own children if he had any. He did not intend to create a trust in her favor, or to deprive himself throughout his life of power to use his property as men with wife and children depending upon them ordinarily use their property. He intended to give the plaintiff the legal status of a child of his body and to leave her his property after he was through with it. He did not intend to so fetter his estate for all time that he could not hold up his head among men and do what others do with the property they accumulate. The lady whom he was about to marry, as in the nature of things it must be presumed, could not have intended to belittle and humiliate him in advance by depriving him of power as long as he lived to make a gift to charity or a present to a friend, even if it was reasonable in amount, when the size of his estate was taken into account. Such a debasing covenant would dishonor both parties, and is inconceivable under such circumstances as the complaint discloses.

The intention of the plaintiff is not to be sought for, as she

was not a party to the agreement except by indirection, but that of the two persons on the threshold of marriage, and presumed to be deeply attached to each other. The lady had been married before. She had a child and a substantial sum of money. In lending that money to her prospective husband to use in his business she made the same provision for her child as if it were a child of the marriage about to take place. By that provision her child was to be adopted by her husband as his own, and made his heir, and he was to leave it his property when he died. It would be unreasonable to hold that either party, by such an agreement made under such circumstances and for such a purpose, intended that the head of the family, although he might live to be an old man and be worth millions, could never consider an application for charity without a blush, because by agreement with his own wife, he could not give any substantial sum even to the most noble object. The intention of the parties may be doubtful when particular words used by them are considered by themselves, but it is clear when all their words are read together in the light of their mutual promises to marry. Regard must be paid not only to their language, but also to what the law implies therefrom in view of their situation.

It is asked, however, whether the decedent could give away all his property to his own relatives, and thus defeat the ante-nuptial contract altogether. And, assuming that he could not do this because it would be unreasonable, it is further asked where the line is to be drawn between the power to give away all and to give away nothing. That line is to be drawn where the courts always draw it when they can, along the boundary of good faith. If the decedent had given away property with furtive intent, for the purpose of defeating the ante-nuptial contract and of defrauding the plaintiff, the gift would have been void. No such fact is alleged in the complaint. No case of fraudulent intent or fraud, in fact, is presented by the plaintiff. Her theory is that any gift, or at least that any substantial gift by the decedent, even if made with the best of intentions, was unauthorized and void. We

do not so read the contract. Any gift made with actual intent to defraud would be void, but none made without such intent, unless so out of proportion to the rest of his estate as to attack the integrity of the contract, when it would be fraudulent as matter of law. The gift might be so large that, independent of intent or motive, fraud upon the contract would be imputed, or arise constructively by operation of law. Reasonable gifts were impliedly authorized. Unreasonable gifts were not, even if made without actual intent to defraud. In the absence of intentional fraud, the question is one of degree and depends upon the proportion that the value of the gift bears to the amount of the donor's estate. The plaintiff alleges that the decedent accumulated a large fortune and had it at the time of his death, and if so a gift of $10,000 made in his lifetime to his brothers and sisters would not be a fraud upon the contract as matter of law, for it would not be unusual or unreasonable for a man so situated to make a gift of that amount to near relatives.

The plaintiff can take nothing in this action by virtue of her judgment in the former action, for, as she expressly alleges, the decree for specific performance is confined to the " money or other property owned and left by the said George W. Kidd at the time of his death." The policy in question was property, but it was neither owned nor left by Mr. Kidd when he died, for by his lawful act it had become the property of others.

We think that the action of the courts below in sustaining the demurrer to the complaint was proper and that the judgment appealed from should be affirmed, with costs.

Cullen, Ch. J., Haight, Werner, Willard Bartlett, Hiscock and Chase, JJ., concur.

Judgment affirmed.