Kottmyer, J.
The plaintiff, Robert E. Nile, individually and as Administrator w.w.a. of the Estate of Arthur W. Nile, brought this action against First NH Investment Services Corp. and Dorothy Nile as Co-Trustees of the Dawn Trust (“the Trustees"). The Complaint is in six counts. In Counts I and II, respectively, the plaintiff individually and as administrator seeks a declaratory judgment that Robert E. Nile is entitled to two-thirds of the principal value of the assets of the Dawn Trust. In Counts III and IV, respectively, Robert Nile asserts claims for breach of contract and breach of the covenant of good faith and fair dealing. In Counts V and VI he asserts claims under the Uniform Fraudulent Conveyance Act. Plaintiff has moved for summary judgment on Counts I through V of his Verified Complaint. For the reasons set forth below, the Motion for Summary Judgment is Allowed as to Counts I through IV and Counts V and VI are dismissed.
UNDISPUTED FACTS
In 1940, Arthur W. Nile (Nile, Sr.) and Florence Nile were married. In 1964, Nile, Sr. divorced Florence Nile in Alabama. At the time of the divorce, the Niles resided in Middlesex County, Massachusetts. Florence Nile was mentally ill and Nile, Sr. had been appointed her guardian by the Middlesex County Probate Court. The Niles had three children, one of whom plaintiff Robert Nile was a minor at the time of the divorce. The Alabama decree did not provide for a division of the marital estate or for the support of either Florence Nile or plaintiff.
Immediately after the divorce, Nile, Sr. married Dorothy Nile. Nile, Sr. and Dorothy Nile moved to New Hampshire in 1965. After the divorce, Robert Nile secured the services of an attorney, Gerald Berlin, through Harvard Legal Aid because he was concerned about the care and well being of his mother and oldest brother, Arthur Nile, Jr., who was mildly retarded. Thereafter, Nile, Sr. resigned as Florence Nile’s guard *663 ian and Laurence D. Shubow was appointed successor guardian by the Middlesex County Probate Court.
Nile, Sr. and Shubow entered into a written settlement agreement dated March 29, 1967. By its terms, the Settlement Agreement was subject to the approval of the Middlesex Probate Court. On March 28, 1968, that court entered a decree, approving the terms of the agreement and authorizing Shubow to sign it on Florence Nile’s behalf. Nile, Sr., who was represented by counsel, assented in writing to the petition for approval of the Settlement Agreement. The two surviving children of the marriage, Arthur Nile, Jr., and plaintiff, a minor,[1] were also represented by counsel and assented to the petition for approval. The third son, William Nile, had died without issue in September 1966. Arthur Nile, Jr. died, without issue, on December 23, 1968.
The Agreement was signed under seal. It released Nile, Sr. from any obligation to support Florence Nile except as set forth in the agreement and from any claims of Florence Nile to Nile, Sr.’s property. It was signed by Shubow as Florence Nile’s guardian. In the Agreement, Florence Nile and Nile, Sr. agreed, inter alia, to the sale and disposition of certain real estate owned by them as tenants by the entirety. In addition, Nile, Sr. agreed in Clause Five of the settlement agreement to keep in force and effect until his death a will under which he would bequeath and devise to the children of his marriage to Florence J. Nile not less than two-thirds of his estate.
Nile, Sr.’s principal asset was stock of A. W. Nile Inc., Co., a company he owned and operated (“the Stock”). Nile, Sr. executed a will on May 12, 1976. It bequeathed virtually all Nile, Sr.’s shares of the Stock to Robert. Nile, Sr. bequeathed the residue of his estate to trustees of The Dawn Trust to be divided equally between a marital trust for Dorothy Nile and a family trust for Robert Nile and his offspring. The Dawn Trust, a revocable inter-vivos trust, was created on May 12, 1976. The Bank and Dorothy Nile are co-trustees of the marital trust.
On January 8, 1977, Nile, Sr. executed the first codicil to his will which eliminated the bequest of the Stock to Robert Nile. The effect of the codicil was that the Stock would become part of the residuary estate and pass to the trustees of the Dawn Trust.[2] Iii September 1976, Nile Sr. sold the assets of A.W. Nile, Inc.
The Dawn Trust was amended by Nile, Sr. on five occasions from 1977 to 1994. On February 2, 1984, the Trust was amended to provide that it would be governed in all respects by New Hampshire law. Nile, Sr. was sole trustee until his death in July 12, 1994. He retained the power to amend the trust, to withdraw assets, to direct the disposition of income and to exercise all incidents of ownership over the trust assets. In 1976 or 1977, Nile, Sr. transferred to the Dawn Trust, in substantial part, the proceeds of the sale of A.W. Nile, Inc. At the time of the transfer the proceeds of the sale of the Stock comprised substantially all of Nile, Sr.’s assets.
When he died on July 12, 1994, Nile, Sr. was a resident of Hudson, Hillsborough County, New Hampshire. His final will has been admitted to probate by the Hillsborough County Probate Court. On April 3, 1996, that court appointed Robert Nile, as creditor, administrator with the will annexed.[3] On April 30, 1996, Robert Nile individually filed a creditor’s demand in the New Hampshire Probate Court claiming two-thirds of all assets owned by Nile, Sr. át the time of his death.
As of the date of his death, all of Nile, Sr.’s assets (approximately $5 million) had been transferred to the Dawn Trust. His probate estate has no assets. As amended, the Dawn Trust directs $600,000.00 to the family trust of which Robert Nile is a beneficiary. The remainder of Nile, Sr.’s assets, approximately $4 million, are in the marital trust. The Trustees have discretion to distribute part or all of the trust principal to Dorothy Nile and she has general power of appointment by will over the assets of the marital trust. She has exercised her power of appointment. In default of her exercise of the appointment, the assets would go to her brother and sister.
Article Six of the Dawn Trust directs the trustees to pay any debts of Nile, Sr. from the trust assets upon written request by the administrator. As administrator w.w.a., Robert Nile has requested in writing that the trustees make available sufficient funds to pay his individual claim under Clause Five of the Settlement Agreement.
The plaintiff filed the complaint in this action in June 1996 seeking, inter alia, a preliminary injunction restraining the defendant trustees from transferring or distributing trust assets pending a decision on the merits. The defendants moved to dismiss the action on the grounds that this court lacked personal and subject matter jurisdiction and did not have jurisdiction to grant the relief sought by the plaintiff. On August 16, 1996, this Court (Lopez, J.) denied the defendant’s motion to dismiss and granted the plaintiffs motion for a preliminary injunction. The defendant Nile’s request for relief from both orders was denied by a Single Justice of the Appeals Court on September 27, 1996.
On January 3, 1997, Dorothy Nile filed a petition in the New Hampshire Probate Court seeking removal of Robert Nile as administrator. She also sought an order compelling Robert Nile to dismiss this Massachusetts lawsuit. On April 21, 1997, the New Hampshire Probate Court denied'her petition.
DISCUSSION
1. The Enforceability of the Settlement Agreement
The Settlement Agreement was under seal and satisfied by actual consideration, e.g., the release, in part, by Florence Nile of her claim to joint marital property and to support. The Agreement is therefore valid and enforceable. Further, Robert Nile, as an *664 identified third-party beneficiary of the settlement agreement, has standing to enforce it. See, e.g., Rae v. Air-Speed, Inc., 386 Mass. 187, 195 (1982); Spennerv. Nutt, 417 Mass 549, 555 (1994). Restatement (Second) of Contracts §302(l)(b) (1981).
In Clause Five of the Settlement Agreement, Nile, Sr. agreed to make and keep in force and effect until his death a will bequeathing not less than two-thirds of his estate to the children of his marriage to Florence Nile.[4] After the Settlement Agreement was executed and entered as an order of the Probate Court he could not unilaterally modify or amend Clause Five.[5] Nile, Sr. was therefore obligated by Clause Five to make and keep in force and effect a will bequeathing not less than two-third’s of his estate to the children of his marriage to Florence Nile.
2. Breach of the Settlement Agreement
It is undisputed that Nile, Sr. did not make and keep in effect until his death a will bequeathing two-thirds of his estate to the children of his first marriage. He therefore breached the agreement. The defendant trustees contend that the remedy for Nile, Sr.’s breach of contract is reformation of the will to include a bequest of two-third’s of Nile, Sr.’s probate estate to Robert Nile. It is undisputed that the probate estate has no assets. The Trustees argue that because “estate” in Clause Five means probate estate Robert was not damaged by the breach of Nile, Sr.’s agreement to make a will in that “two-thirds of zero equals zero.”[6] Robert Nile argues that the transfer by Nile, Sr. of substantially all of his assets to the Dawn Trust breached the covenant of good faith and fair dealing.
In Massachusetts, every contract has an implied covenant of good faith and fair dealing. Anthony’s Pier Four, Inc. v. HBC Associates, 411 Mass. 451, 471 (1991), Restatement (Second) of Contracts §205 (1979). This covenant provides that neither party “shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract Id. at 471-72, quoting Druker v. Roland Wm. Jutras Assoc., 370 Mass. 383, 385 (1976). The Trustees argue that the issue whether Nile, Sr. acted in bad faith when he transferred the assets is a question of fact which precludes entry of summary judgment on this claim. But the focus of the inquiry is on the effect which the actions of the party alleged to be in breach has on the reasonable expectations of 'the other party to enjoy the fruits of the contract.
Good faith performance ... of a contract emphasizes faithfulness to an agreed .common purpose and consistency with the justified expectations of the other party; it excludes a variety of types of conduct characterized as involving “bad faith” because they violate community standards of decency, fairness or reasonableness.
Restatement (Second) of Contracts §205, comment (a) (emphasis added). Conduct which has the effect of destroying the bargained-for benefits of the contract violates the covenant even when the actor has the best of intentions. “Subterfuges and evasions violate the obligation of good faith in performance even though the actor believes his conduct to be justified . . . [F]air dealing may require more than honesty." Id., comment d.
In a case which illustrates this point, Larsen v. Larsen, 37 Mass.App.Ct. 106, 109-10 (1994), the Court of Appeals held that (1) where a separation agreement provided that a husband would pay a stated percentage of his earned income as alimony; and (2) the husband who was in good health voluntarily retired from a successful career some years before his normal retirement age, the husband breached the duty of good faith and fair dealing when he retired without making other provision for his wife’s support. The Court did not address the question whether the husband made the decision to retire in bad faith;[7] it held that there was a breach of the covenant because “(t]hat decision deprived the wife of her reasonably anticipated fruits of the separation agreement and amounted to ‘an evasion of the spirit of the bargain.’ ” Id. at 110.
In this case, had Nile, Sr made a will as agreed, the transfer of all of his assets to the Dawn Trust would have destroyed Robert Nile’s right to the benefits of the contract. The Trustees argue that because Nile, Sr. was free to give away his property during his life, he was, ipso facto, able to transfer it to a trust. In my view, Nile, Sr was not free, after entering into the Separation Agreement, to give away all of his property before he died. See 1 W. Bowe & D. Parker, Page on the Law of Wills, §10.23 at 492-93-1; Hatcher v. Sawyer, 52 N.W.2d at 490, 496 (Iowa 1952); Bruce v. Moon, supra, 35 S.E. at 418-19. The question in such cases is whether the gift is so out of proportion to the rest of the estate that it is fraudulent as a matter of law. See Dickinson v. Seaman, 193 N.Y. 18, 85 N.E. 818, 820 (1908). See also Eaton v. Eaton, 233 Mass. 351, 375-76 (1919).[8]
In any event, Nile, Sr. did not give away the property during his life. He did not relinquish ownership of the property. On the contrary, he retained “all substantial incidents” of ownership of the property. State Street Bank & Trust Co. v. Reiser, 7 Mass.App.Ct. 633, 638 (1979). Assets of a revocable inter-vivos trust like the Dawn Trust are not part of the settlor’s probate estate, but they are part of his estate in the broader sense of the word — as witnessed by the fact that such trusts are common “estate planning vehicle[s].” Id. at 638. In interpreting a contract, the court’s first duty is “to put ourselves in the place of the parties to the instrument, and then to read it, giving to its words their plain and ordinary meaning in light of the circumstances, and in view of the subject matter, the acts of the parties, and their relations to each other.” Aldrich v. Bay State Construction Co., 186 Mass. 489 (1904). Where words of a contract are plain and free from ambiguity they must be construed in their usual and ordinary sense. Jacobs v. U.S. Fidelity & Guar. Co., 417 Mass. 75 *665 (1994). A fair reading of the Settlement Agreement in the circumstances in which it was executed compels the conclusion that the parties had a reasonable expectation that Nile, Sr.’s surviving children would receive two-thirds of his estate at the time of his death in the broad sense of the word, i.e., two-thirds of the property owned by him at the time of his death.
I therefore find that Nile, Sr. breached Clause Five by failing to make a will in accordance with the terms of the Settlement Agreement and breached his duly of good faith and fair dealing by transferring all of his property to the Dawn Trust.
3.Remedy for Nile, Sr.’s Breach of the Settlement Agreement a. Applicable Law
The plaintiff argues that under Massachusetts law, where a testator breaches a contract to make a legacy, the promisee is a creditor of the estate to the extent of his damages. See Delorafano v. Delorafano, 333 Mass. 684, 688 (1956); Downey v. Union Trust Co. of Springfield, 312 Mass. 405 (1942). Further, in Massachusetts, the assets of a revocable inter-vivos trust may be reached by creditors. Reiser, supra, 7 Mass.App.Ct. At 638-39. While these may be correct statements of Massachusetts law, I do not agree that these issues are governed by Massachusetts law. Nile, Sr. was a resident of New Hampshire for over tweniy-five years when he died. His estate is being probated in New Hampshire. The Trust states that it is governed by New Hampshire law. New Hampshire law governs the validity and construction of the Dawn Trust and the availability of trust assets to satisfy claims of creditors of Nile, Sr.’s estate. See Restatement (Second) Conflict of Laws §§268(1), 269 (1971).
Notwithstanding the applicability of New Hampshire law to questions relating to interpretation of the trust and to the availability of trust assets to satisfy claims of creditors of the estate, Massachusetts law clearly governs the rights of the parties to the Settlement Agreement and their remedies on breach of that agreement. As demonstrated by the following facts, Massachusetts is the state with the greatest number of contacts and the most significant relationship with the contract. See Choate Hall & Stewart v. SCA Services, Inc., 378 Mass. 535, 540-42 (1979); Ellis v. Royal Ins. Cos., 129 N.H. 326, 330-31, 530 A.2d 303, 306 (1987):
The Settlement Agreement was entered into in Massachusetts and was made in settlement of a long-term marriage which had a Massachusetts domicile.
The Settlement agreement was approved and authorized by the Middlesex County (Massachusetts) Probate Court.
Nile, Sr. was a party to the Probate Court proceeding and sought court approval of the contract.
One of the parties to the contract was the court appointed guardian of an incompetent woman who was and is a resident of Massachusetts.
One of the beneficiaries of the contract (plaintiff) was a minor child who was then and is now domiciled in Massachusetts.
b. Remedy
In Massachusetts, it is established that a Court “will declare a party a constructive trustee of property for the benefit of another if he acquired the property through fraud, mistake, breach of duty, or in other circumstances indicating that he would be unjustly enriched.” Fortin v. Roman Catholic Bishop of Worcester, 416 Mass. 781, 789 (1994) (emphasis added). See Sullivan v. Rooney, 404 Mass. 160, 162-64 (1989). A constructive trust is a remedy employed in equity in the absence of any intention of the parties to create a trust. “It is difficult to define the exact scope of this remedy because of the diversity and variety of the different forms which come within its sweep." Barry v. Covich, 332 Mass. 338, 342 (1955). In this case, the transferees, the trustees of the Dawn Trust, are not wrongdoers and did not obtain the property by fraud. But they may be likened to an innocent donee to whom an owner transfers property in fraud of his creditors or breach of other obligation. In these circumstances, a transferee of property, who is not a bona fide purchaser for value, holds the property under a constructive trust for the wronged party. See Restatement of Restitution §168(1). See also Id. §201(1). Simonds v. Simonds, 380 N.E2d at 189, 193-94 (1978).[9] I therefore find that a constructive trust is the appropriate remedy in this case. In so finding I place particular emphasis on the circumstances under which the Settlement Agreement was executed, and the fact that it was approved by the Middlesex Probate Court.
4.Accord and Satisfaction
Dorothy Nile also argues that Robert Nile entered into an accord and satisfaction with his father whereby he relinquished his rights under the Settlement Agreement. The defense of accord and satisfaction was not pleaded in this case as required by Mass.R.Civ.P. 8(c). Moreover, the facts relied by Dorothy Nile, at Mil and 12 of her affidavit, if admissible,[10] are insufficient as a matter of law to establish an accord and satisfaction. She alleges no facts which would support a finding that Robert Nile agreed to the arrangement in satisfaction of his claim under the Settlement Agreement[11] or that the unexecuted accord discharged the obligation established by the Settlement Agreement. See Lipson v. Adelson, 17 Mass.App.Ct. 90, 92-93 (1983).
5.Dorothy Nile’s Claim to Joint Ownership of Trust Assets
The defendants argue that summary judgment may not be granted because there are material issues of fact as to whether Dorothy Nile was a joint owner with Nile, Sr. of the assets of the Dawn Trust. In 1995, Dorothy Nile signed a federal estate tax return prepared by her then attorney in which she stated, under penalties of perjury, that the trust assets were not part of the joint property owned by her and Nile, Sr. (Ex. 4 *666 to Robert Nile Affidavit, Schedules E & G.) In her deposition in this case, she admits that the Dawn Trust was funded exclusively with proceeds of the sale of assets of A.W. Nile Company, Inc. (Dorothy Nile Dep. at p. 63), and that she was never an owner, shareholder or officer of the company (id. at 53-55).
Dorothy Nile now relies on her November 6, 1997 affidavit and affidavits of J. Edward Roney, Jr., and Susan Parigian in support of her contention that there are genuine issues of fact as to ownership of the trust assets. Neither the Parigian nor the Roney affidavits contain admissible evidence that Dorothy Nile had an ownership interest in any of the assets Nile, Sr. transferred to the Dawn Trust.[12] The fact that Dorothy Nile may have contributed assets to the company in 1964,[13] assisted in running the business, and advised her husband regarding stock investments, as alleged in ¶¶2, 5, 6 and 10 of her affidavit, are insufficient, as a matter of law, to create a genuine issue of material fact as to ownership of the assets transferred to the Dawn Trust given Dorothy Nile’s admission that she had no ownership interest in the company and the undisputed fact that she did not have legal title to any of the stock certificates transferred to or held by the Trust during Nile, Sr.’s life.
CONCLUSION
A.For the reasons stated herein, plaintiffs motion for summary judgment is ALLOWED as follows:[14]
Judgment shall enter in favor of plaintiff on Counts I through IV as follows:
A. Declaring that Arthur Nile, Sr. breached Clause Five of the Settlement Agreement by failing to keep in full force and effect until his death a will which devised and bequeathed two-thirds of his estate to the children of his marriage to Florence Nile;
B. Declaring that Arthur W. Nile, Sr. breached the covenant of good faith and fair dealing by transferring substantially all of his assets to the Dawn Trust;
C. Declaring that the Trustees of the Dawn Trust hold two-thirds of the trust assets as of the date of Nile, Sr.’s death less taxes and expenses of administration plus interest in trust for Robert Nile;
D. Ordering that the Trustees of the Dawn Trust transfer to Robert J. Nile two-thirds of the assets of the Dawn Trust less taxes, expenses of administration and distributions made to Robert Nile with interest adjusted accordingly; and
E. Counts V and VI of the complaint are dismissed.

 In 1974, the age of majority was changed from twenty-one to eighteen. Mass. Gen. Laws c. 231, §85P.

 Second and third codicils executed by Nile, Sr. in 1984 and 1994 concerned the appointment of an executor and trustees.

 The Court denied Dorothy Nile’s objections to Robert Nile’s appointment and her petition that she be appointed administrator wwa.

 The agreement meets the requirements of the statute of frauds, Le, a writing signed by Nile, Sr. which contains all material terms of the contract. See G.L.c. 259, §5A.

 If Nile, Sr. wished to amend the terms of the contract to take advantage of favorable tax provisions or because Arthur Nile, Jr., had predeceased him, he was obliged to negotiate such changes with Florence Nile’s guardian.

 The Court in Bruce v. Moon, 35 S.E. 415, 418-19 (S.C. 1900), characterized a similar argument as a “mere play on words” and stated:
To say that a person has fulfilled his agreement to give to another all of his property at his death in consideration of valuable services performed by making his will in accordance with such agreement, and then to turn right around and annul and effectively destroy such testamentary provision by conveying away all his property to another, leaving nothing whatever upon which the will could operate, would be but keeping the word of the promise to the ear and breaking it to the hope.

 The Court did note that the husband was in good health, a fact the court notes was relevant to the parties’ reasonable expectations at the time the agreement was reached.

 In Dickinson, which involved an antenuptial contract, the court pointed out: “The gift may be so large that, independent of intent or motive, fraud upon the contract would be imputed, or arise constructively by operation of law. Reasonable gifts were impliedly authorized. Unreasonable gifts were not, even if made without actual intent to defraud. In the absence of intentional fraud the question is one of degree, and depends upon the proportion that the value of the gift bears to the amount of the donor’s estate . . .”
Although the Court in Eaton emphasized the fraudulent purpose of the donor in making the gift, it stated that to avoid breach of an antenuptial agreement to will a proportional part of one’s estate by reason of inter-vivos gifts to third parties, such gifts must be “reasonable in amount having regard to all the circumstances.” 233 Mass. at 375.

 In ruling that a constructive trust is the appropriate remedy in this case because the property was transferred in breach of Nile, Sr.’s duties under the Settlement Agreement, I rely on the established principle that where a person breaches a contract to bequeath property, equity will grant relief to the promisee. In such cases, “the heirs, devisees, next of kin or personal representatives of the deceased promisor [are] held as trustees of the property which the promisor had agreed to devise or bequeath ...” Page on Wills, supra, §10.30 at 504-08. See Rich v. Mottek, 11 N.Y.2d 90, 181 N.E.2d 445, 447 (1962); Bruce v. Moon, supra 35 S.E. at 419-20.

 Statements of Nile, Sr. would be admissible only after findings that the statements 1) were made by the deceased; 2) were based on personal knowledge; and 3) were made in good faith. G.L.c. 233, §65.

 The statements in ¶¶11 and 12 of Dorothy Nile’s affidavit that Robert Nile “acknowledged his acceptance of the trust arrangement to fully take care of anything he may have been entitled to" after Nile, Sr.'s death and to take care of “any past agreements” are too general to support a finding that Robert Nile had relinquished his rights under the Settlement Agreement.

 Roney’s affidavit, to the extent relevant, sets forth inadmissible hearsay, ¶¶4 through 8, 10 and 11 and legal conclusions couched as opinions which Roney is not competent to render (¶16). Parigian’s affidavits are similarly flawed.

 Dorothy Nile does not identify the assets and does not state their value.

 In view of the foregoing, it is not necessary to reach plaintiff s claims under the Uniform Fraudulent Conveyance Act in Counts V and VI of the Complaint and they are hereby dismissed.