Hillsborough,
No. 5595.

CONSOLIDATED MUTUAL INSURANCE COMPANY

*v.*

RADIO FOODS CORPORATION *& a.*

Argued October 3, 1967.
Decided March 29, 1968.

*Sheehan, Phinney, Bass & Green* and *E. Paul Kelly* ( *Mr. Kelly* orally ), for the plaintiff.

*Devine, Millimet, McDonough, Stahl & Branch* and *Robert A. Backus* (*Mr. Backus* orally), for the defendant Radio Foods Corporation.

*Wiggin, Nourie, Sundeen, Nassikas & Pingree,* for the defendant, *Louis H. Salvage Shoe Company,* filed no brief.

LAMPRON, J. This is a petition for a declaratory judgment brought by the plaintiff insurer against its insured, Radio Foods Corporation, and against Louis H. Salvage Shoe Company, plaintiff in a tort action against Radio Foods, to determine the rights and obligations of the parties as a result of a fire on July 25, 1963 in the premises occupied by Radio Foods in Manchester which caused water damage to Salvage Shoe, another tenant in the same building. The Trial Court (*Leahy,* C. J.) made certain findings and rulings and decreed that Consolidated was under obligation to defend, and to pay, within the limits of its policy, any judgment obtained in the action of Salvage Shoe against Radio Foods. Plaintiff's exceptions to certain findings and rulings, to parts of the decree, and to the denial of its motions to set aside the decree and for judgment in its favor were reserved and transferred.

On the date of the fire, July 25, 1963, there was in effect a comprehensive general automobile policy with many endorsements by which Consolidated covered various casualty risks of Radio Foods in Lawrence, Massachusetts, its principal place of business, and in Manchester with an endorsement countersigned by a New Hampshire resident agent pertaining to the latter coverage. RSA 405:18. Under "I Coverage D-Property Damage Liability— Except Automobile" Consolidated agreed, subject to policy terms and conditions, "To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury to or destruction of property, including the loss of use thereof, caused by accident." Condition 10 of the policy provided as follows: "Notice of Accident. When an accident occurs written notice shall be given by or on behalf of the insured to the company or any of its authorized agents as soon as practicable. Such notice shall contain particulars sufficient to identify the insured and also reasonably obtainable information respecting the time, place and circumstances of the accident, the names and

addresses of the injured and of available witnesses."

Consolidated maintains that it is under no obligation to defend and pay in the action of Salvage Shoe against Radio Foods because the latter failed to give it notice until December 12, 1963 of the damage which occurred on July 25, 1963. It also contends that the issue of whether Radio Foods gave notice "as soon as practicable" within the requirements of condition 10 of its policy should be determined in accordance with the laws of Massachusetts since the policy was issued in Massachusetts, to a Massachusetts Corporation, by an insurance company authorized to do business in that state. The Trial Court ruled that the policy was to be interpreted and construed in accordance with the laws of New Hampshire.

In years gone by, in the absence of a clearly expressed intention of the parties as to what law was to govern ( *Davis* v. *Insurance Co.,* 67 N. H. 218, 219; *Goulet* v. *Goulet,* 105 N. H. 51, 52 ), the choice-of-law rule in contracts was based, as in the case of torts, on a rigid and fairly mechanistic approach. Goodrich and Scoles, Conflict of Laws, *s.* 106, *p.* 202 ( 1964 ). See *Clark* v. *Clark,* 107 N. H. 351, 352. Under this view, exemplified by Restatement, Conflict of Law, *ss.* 311-376, the contract was to be governed by the law of the place where it was made except as to matters of performance which were governed by the law of the place where it was to be performed. *Priddle* v. *Insurance Company,* 100 N. H. 73, 75; *Maryland Casualty Co.* v. *Martin,* 88 N. H. 346, 348. See N. H. Annots., Restatement, Conflict of Laws, *pp.* 60-70 ( 1943 ). It has been felt that under this approach "the primacy of the intent of the parties was lost." Goodrich and Scoles, Conflict of Laws, *s.* 106, *p.* 201.

The American Law Institute has made a change from its earlier dogmatic approach, stated above, to an emphasis on the power of the parties to choose the governing law. It now advocates that, in the absence of an express choice of law validly made by the parties, the contract is to be governed, both as to validity and performance, by the law of the state with which the contract has its most significant relationship. Restatement ( Second ), Conflict of Laws, Tent. Draft No. 6 ( 1960 ), *ss.* 332, 332a, 332b. In so doing it is "starting anew with the fundamental contract policy

of giving effect to the intention of the parties and their reasonably justified expectations." Goodrich and Scoles, Conflict of Laws, *s.* 106, *p.* 202. "The present approach is believed to be supported by the majority of the cases and by the majority of the text writers." Restatement ( Second ), Conflict of Laws, Tent. Draft No. 6 ( 1960 ), *p.* 5. This approach coincides with a long established rule of law in this state that in such a situation "the object is to ascertain the real intention of the parties; and to ascertain that intention, regard may be had to the nature of the instrument itself, the situation of the parties executing it, and the purpose they had in view." *Davis* v. *Insurance Co.,* 67 N. H. 218, 219. See *Priddle* v. *Insurance Company,* 100 N. H. 73, 75.

Applying these principles to the contract of insurance in this case, a matter of significant concern was the location in New Hampshire of the particular risk with which we are dealing. "The principal location of the insured risk is the contact that is given the greatest weight in determining the state whose local law is to govern . . . the rights created thereby." Restatement ( Second ), Conflict of Laws, Tent. Draft No. 6 ( 1960 ), *s.* 346 i, *comment* a. Even though the policy also dealt with risks in Massachusetts, where the principal office of the insured was located, the New Hampshire risk insured is to be treated as though it were insured by a separate policy and the validity of and rights under the multiple risk policy as to this risk are to be governed by the laws of this state. *Id., comment* f.

That the above reflects the actual intent of the parties is borne out by the fact that they did comply with the requirements of RSA 405:18 by having that part of the multiple risk policy pertaining to the risk situated in New Hampshire countersigned by an agent who is a resident of this state and regularly commissioned and licensed to transact business here. Consequently New Hampshire is "the jurisdiction with which the matter at hand is predominantly or most intimately concerned," and the Trial Court properly ruled that the contract and its provisions were to be governed by the law of this state in these proceedings. *Boston Law Book* v. *Hathorn,* 119 Vt. 416, 424; *Davis* v. *Insurance Co.,* 67 N. H. 218, 219. See *Priddle* v. *Insurance Company,* 100 N. H. 73, 75; *Auten* v. *Auten,* 308 N. Y. 155; *Peterson* v. *Warren,* 31 Wis. 2d 547; *Baffin Land Corp.* v.

*Monticello Motor Inn,* 425 P. 2d 623 ( Wash. 1967 ); 16 Am. Jur. 2d, Conflict of Laws, *ss.* 41, 42, *pp.* 64-68.

It follows that the finding of the Trial Court that notice was given "as soon as practicable" under the terms of the policy is to be tested by the laws of New Hampshire. "A policy requirement that notice of the accident be given 'as soon as practicable' is commonly considered to require notice as soon as is reasonably possible . . . which is generally interpreted to call for notice to be given within a reasonable time in view of all the facts and circumstances of each particular case." *Sutton Mutual Insurance Company* v. *Notre Dame Arena,* 108 N. H. 437. "The timeliness of the notice must be determined in the light of the situation existing both when the accident occurred and when the notice was given . . . . In deciding whether notice of the accident was given within a reasonable time, the following circumstances, among others, are to be considered: the length of the delay in giving notice, the reasons for it, and the probable effect of the delay on the insurer." *Id.,* 440.

The Trial Court made the following findings and rulings:

"In the early morning hours of July 25, 1963, a fire was discovered on premises of Radio Foods Corporation, Dow Court, Manchester, New Hampshire. This fire, in and of itself, was not of any consequence, but it set off an overhead sprinkler system causing water to seep through the floor to the area occupied by Louis H. Salvage Shoe Company directly beneath. Radio Foods had a large refrigerator in operation for the protection of its food products and it appears the compressor unit to the refrigeration system ignited, for some reason not yet conclusively determined. A defect in the compressor is alleged by Louis H. Salvage Shoe Company.

"John Chambers, local manager for Radio Foods, was on the scene from early in the morning through most of the day of the fire. Mr. Leonard Seeche, of Lawrence Massachusetts, General Manager for Radio Foods, was on the premises the day of the fire. He was informed of water damage to the area below Radio Foods, but at that time it was represented as small.

"On the date of the fire, and for some time after, the premises were visited and inspected by representatives of fire insurance companies. . . . Adjustments were made as losses resulting from

fire and water damage. At no time did anyone engaged in adjusting the losses incurred, including Louis H. Salvage Shoe Company, do anything to directly call to the attention of the officers and agents of Radio Foods Corporation that a liability claim for negligence was to be made against Radio Foods or that even grounds existed to sustain such a claim, if made. A letter written to Mr. Seeche by William J. Carney, Building Manager for the owners of the premises occupied by both Radio Foods and Salvage . . . called attention to the duty of the tenant to use care, but it is found to be of insufficient import, under the circumstances, to have alerted the defendant, Radio Foods, to consider that the fire was caused by its negligence and would be the subject of action against it.

"Under date of July 26, 1963, Attorney Paul E. Nourie wrote to Radio Foods . . . requesting an opportunity to have the compressor examined and asked that it be kept intact in the condition it was when removed from the premises on Dow Court. This letter avoids any claim of negligence or suggestion of such claim. Such suggestion might be read into it by one trained in the law, but could be treated as merely curiosity on the part of a fire insurance adjuster as to what was the origin of the fire.

"No more was done until December 2, 1963. On that date, Radio Foods received a letter signed by Attorney Nourie, making a claim for various unnamed insurance companies that the fire of July 25, 1963, originated by reason of the negligence of the agents, servants, or employees of Radio Foods. This letter was forwarded to the Archie Slawsby Insurance Agency in Nashua. This agency carried fire insurance for Radio Foods. Slawsby returned the letter. The writ in the action of Salvage Shoe against Radio Foods is dated December 9, 1963, and shows service on an agent of the corporation on December 12, 1963. All papers were then promptly sent to the Wendell Berman Insurance Agency, Lawrence, Massachusetts. The Berman Agency forwarded all papers to the Northeast Insurance Agency of Boston, agent of Consolidated Insurance, for the purpose of receiving notice."

The plaintiff properly makes no serious claim that the above findings were not supported by the record. It would serve no useful purpose for this court to demonstrate by detailed citations of testimony that these findings and the inferences drawn there-

from by the Trial Court were warranted. Suffice to say that we so find and hold on the testimony in the record and the exhibits admitted in evidence.

The Trial Court further found and ruled as follows:

"As to notice, the Court finds that the officers and agents of Radio Foods were unaware of any danger of a claim being made against Radio Foods for negligence. That, as laymen, they thought and honestly believed that the matter was strictly a fire loss, covered by proper fire insurance, and that each party injured would be paid by its insurance carrier and that would be the conclusion of the matter. Radio Foods had nothing to gain by failing to give notice and a lot to lose by not giving notice. The Court rules Radio Foods was not required to give notice until it knew it was subject to a liability claim, or in the exercise of reasonableness, should have known. The Court rules that under all the circumstances surrounding this action that Radio Foods Corporation gave notice of the fire and subsequent claim for damages by Louis H. Salvage Shoe Company 'as soon as practicable' under the provisions of the policy."

From the nature of the conversations between the agents of Radio Foods and those of Salvage Shoe immediately after the fire; the content of letters pertaining to the fire received by Radio Foods from a representative of the landlord, and from an attorney on behalf of the adjuster for the various fire insurance companies involved; from other circumstances, including the lack of specific notice to Radio Foods sufficient to indicate to a reasonable person in its position that culpable neglect on its part might constitute the basis for a claim for damages; the Trial Court could properly find that Radio Foods was justifiably ignorant that the fire on its premises could be connected with or result in a claim under the liability coverage provided to it by Consolidated requiring that it should be notified of the incident. *Pawtucket Mut. Ins. Co.* v. *Lebrecht,* 104 N. H. 465, 470; *Farm Bureau Ins. Co.* v. *Manson,* 94 N. H. 389; *American Employers' Insurance Co.* v. *Swanzey,* 108 N. H. 433.

The evidence further warranted the finding that when Radio Foods learned by writ served on it December 12, 1963 that a claim for damages was being made based on its causal negligence for the fire of July 25, 1963, all papers were then promptly sent

to an agent of the plaintiff. *Sutton Mutual Insurance Company* v. *Notre Dame Arena,* 108 N. H. 437.

Furthermore there was evidence from which it could be found that the adjuster who investigated the fire immediatly after its occurance made a detailed report of his investigation which was used at the hearing as the basis of the testimony of an officer of his agency. There was also evidence that the compressor suspected of being responsible for the fire was made available for inspection at the time of that investigation. The probable availability to Consolidated of the results of an immediate and apparently thorough investigation made shortly after the fire would tend to lessen materially any claim of prejudice to plaintiff because of delayed notice. *Hartford Accident &c. Co.* v. *Cuttler,* 108 N. H. 112.

We hold that under all the circumstances existing both when the fire occurred and when the notice was given, including the length of the delay in giving notice, the reasons for it, and the probable effect of the delay on the insurer, the Trial Court properly found and ruled that notice was given "as soon as practicable" within the conditions of the policy. The Court therefore properly ruled that Consolidated was under obligation to defend the action brought by Salvage Shoe against Radio Foods and to satisfy any judgment obtained in that suit within the limits of its policy. *Pawtucket Mut. Ins. Co.* v. *Lebrecht, supra; Sutton Mutual Insurance Company* v. *Notre Dame Arena, supra; American Employers' Insurance Co.* v. *Swanzey, supra.*

*Exceptions overruled.*

GRIMES, J., concurred in the result; the others concurred.