Hillsborough
No. 85-554

VALERIE G. ELLIS

v.

ROYAL INSURANCE COMPANY AND
THE CONCORD GROUP INSURANCE COMPANIES

CONCORD GENERAL MUTUAL INSURANCE COMPANY

v.

ROYAL INSURANCE COMPANY AND
VALERIE G. ELLIS

May 28, 1987

*Brown and Nixon P.A.*, of Manchester (*Leslie C. Nixon* and *David L. Nixon* on the brief, and *Mr. Nixon* orally), for Valerie G. Ellis.

*Devine, Millimet, Stahl & Branch P.A.*, of Manchester (*Andrew D. Dunn* on the brief and orally), for Royal Insurance Company.

*Wiggin & Nourie*, of Manchester (*Gordon A. Rehnborg, Jr.*, and *James W. Latshaw* on the brief, and *Mr. Rehnborg* orally), for Concord Group Insurance Companies.

BROCK, C.J. This appeal arises out of two consolidated cases and involves issues of choice of law, the applicability of RSA 264:15, I, to an insurance policy neither issued nor delivered in this State, primary versus excess insurance coverage, allocation of a credit for insurance coverage available from a tortfeasor, and the permissibility of awarding Valerie G. Ellis (Ellis) attorney's fees, costs, and interest. We affirm in part, modify in part, and reverse in part.

On November 13, 1982, Ellis, a Purolator Courier (Purolator) employee acting within the scope of her employment, was driving a truck owned by Purolator. A collision between the Purolator truck and a pickup truck driven by Manuel Rosa occurred in Wilton, and Ellis was seriously injured. The accident was caused by Rosa's neg-

ligence. At the time of the accident, three insurance policies, more fully described below, potentially covered Ellis. One policy had been issued to Purolator by Royal Insurance Company (Royal), one had been issued by Concord Group Insurance Companies (Concord) to Ellis, and the other had been issued by Concord to Ellis's parents. With the consent of Royal and Concord, Ellis settled with Rosa, the tortfeasor, for $25,000, the full amount of coverage available under the automobile liability policy issued to him by Norfolk & Dedham Mutual Insurance Company.

Ellis then filed a demand for arbitration with the American Arbitration Association. She and the insurers agreed that the issues decided in the arbitration proceeding would be limited to two: First, whether Ellis could recover uninsured motorist benefits at all and, second, if she was entitled to such benefits, the amount thereof. The parties further agreed that issues regarding coverage would be litigated after the arbitration proceeding was completed. After a hearing on July 13, 1983, the arbitrator determined that Royal and Concord were obligated to pay uninsured motorist benefits to Ellis in the total amount of $285,000.

Ellis sued Royal and Concord by writ returnable the first Tuesday in November 1983 in order to satisfy the arbitrator's award. On September 28, 1983, Concord filed a petition for declaratory judgment to determine, *inter alia*, three issues: First, the amount of uninsured motorist coverage to be provided by Royal; second, which company's coverage was primary; and third, how the $25,000 credit should be apportioned between the two companies. The actions were consolidated, and the Superior Court (*Dalianis*, J.) ruled that Royal must provide up to $1,000,000 in uninsured motorist coverage pursuant to RSA 264:15, I, and that Concord's coverage was primary. Thus, according to the trial court, Ellis was entitled to recover uninsured motorist benefits totaling $260,000 ($285,000 minus the $25,000 tortfeasor credit) plus interest, court costs, and attorney's fees. The court apportioned the award and costs as follows: Concord was obligated to pay $150,000 (the stacked total coverage provided by the two policies), interest, one-half Ellis's court costs and one-third of her attorney's fees. Royal was ordered to contribute $110,000, interest, one-half of her court costs, and two-thirds of her attorney's fees.

Concord and Royal moved for reconsideration and clarification on various grounds. In an order dated November 14, 1985, the court reconsidered its prior decision and, "in the interests of equity," decided that each should receive half the tortfeasor credit. Therefore, the court ordered Concord to pay $137,500 and Royal to pay $122,500 to Ellis. The court further stated that Ellis's counsel was

entitled to recover from the insurers only those fees generated by the declaratory judgment litigation, and not fees for total time spent. The court ordered that itemized bills be submitted to the insurers, and stated that the remainder of the fee should be collected from Ellis pursuant to the existing contingent fee arrangement.

Both Concord and Royal appealed from the trial court's orders and both filed opening and reply briefs. Because of the complexity of the case and the intricacy of the issues, our approach will be as follows: We will first set out the issues in as summary a manner as possible, consistent with understanding them, then we will proceed to deal with the several issues in as much detail as is required in separate sections of the opinion. The issues will be considered in the body of the opinion as the logic of the case dictates: (1) choice of law; (2) applicability of RSA 264:15, I, to the Royal policy; (3) primary versus excess insurance coverage; (4) allocation of the $25,000 tortfeasor credit; and (5) attorney's fees, costs, and interest.

In its cross-appeal, Royal argues that New Hampshire's choice-of-law rules should be applied in such a way as to give effect to the claimed intent of Royal and Purolator to limit the New Hampshire uninsured motorist coverage exposure to $25,000. Further, Royal contends that, even if New Hampshire's choice-of-law rules dictate that New Hampshire law should apply, the provision of the statute at issue, RSA 264:15, I, does not apply by its terms to the Royal policy since the Royal policy was neither issued nor delivered in New Hampshire. In addition, Royal argues in response to Concord's appeal that if the first two issues are decided adversely to it, then the Royal policy provides only excess, and not primary, coverage. Finally, Royal maintains that it is entitled to the full credit for the coverage provided under the tortfeasor's automobile liability policy.

Concord, however, argues in its appeal that the Royal policy provides uninsured motorist insurance to Ellis on a primary basis both because that is the result dictated by applicable rules of contract construction and because the Financial Responsibility Act precludes the provision of only excess uninsured motorist coverage. Further, Concord argues that the trial court erred in its fifty-fifty apportionment of the tortfeasor credit and advocates a formula by which the credit would be apportioned between the insurers according to how much of the award each insurer is required to pay. Finally, Concord argues that it is not liable for attorney's fees or costs of the litigation and contends that interest should be calculated only on Royal's portion of the award.

Ellis's cross-appeal was rejected as untimely, and her motion to permit late filing was denied by order dated February 20, 1986. However, she was permitted to file a brief and has presented several

arguments. First, she argues that RSA 264:15, I, is applicable to Royal's policy. Second, she argues, alternatively, that if the statute does not so apply, then as a third-party beneficiary of the insurance contract, which was intended to comply with New Hampshire statutory requirements, she may so enforce it. Finally, she argues that she is entitled to attorney's fees under RSA 491:22-b and interest under RSA 524:1-b as against both Royal and Concord. We proceed to our analysis of each of these issues.

## I. *Choice of Law*

The trial court ruled that New Hampshire choice-of-law rules dictate the application of substantive New Hampshire law to this case, citing primarily *Consolidated Mutual Insurance Co. v. Radio Foods Corp.*, 108 N.H. 494, 240 A.2d 47 (1968) and *Diamond International Corp. v. Allstate Insurance Co.*, 712 F.2d 1498 (1st Cir. 1983). The court below stated,

> "[t]he contract is to be governed by the law of the state [with] which the contract has its most significant relationship, and, with a contract for insurance, the contact that is given the greatest weight is the principal location of the insured risk. In this case, the Court has found that the insured risk was located in New Hampshire; thus, the Court finds that the contracts [sic] most significant contact is with New Hampshire and New Hampshire law shall govern its operation."

On appeal, Royal argues that a basic principle consistently honored by this court is that the parties' intent and their reasonable expectations will govern the choice-of-law determination. In this instance, it is argued, Royal and Purolator intended to limit New Hampshire uninsured motorist coverage to $25,000, expressing that intent in an endorsement to the policy.

Concord, however, asserts that New Hampshire law should govern the construction and application of the Royal policy, arguing that the old *lex loci contractu* rule has been abandoned in New Hampshire in favor of the "most significant relationship" test of the Restatement (Second) of Conflict of Laws § 188(1) (1971). According to Concord, the State with the most significant relationship to an insurance contract is that which is "'[t]he principal location of the insured risk.'" *Consolidated Mut. Cas. Co. v. Radio Foods Co., supra* at 497, 240 A.2d at 49 (quoting RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 346i, comment *a* (Tent. Draft No. 6, 1960)); *see also Diamond Intern. Corp. v. Allstate Ins. Co., supra* at 1501. Concord, of course, argues that the principal location of the insured risk in this

particular instance is New Hampshire, where the truck driven by Ellis was registered, garaged, and driven.

■ We hold that the analysis set forth in *Consolidated Mutual Insurance Co. v. Radio Foods Corp. supra* governs in the absence of an explicit choice otherwise, and that, therefore, New Hampshire law is applicable under the circumstances of this case. In *Radio Foods,* this court stated that "[i]n years gone by, . . . the contract was to be governed by the law of the place where it was made except as to matters of performance which were governed by the law of the place where it was to be performed." *Id.* at 496, 240 A.2d at 48–49. However, noting that the American Law Institute's approach had changed, the court adopted the new doctrine which it formulated as follows: "[I]n the absence of an express choice of law validly made by the parties, the contract is to be governed, both as to validity and performance, by the law of the state with which the contract has its most significant relationship." *Id.* at 496, 240 A.2d at 49. This court, citing the Restatement (Second) of Conflict of Laws § 346i, comment *a* (Tent. Draft No. 6, 1960), stated that an important concern was that the particular risk dealt with in that case was located in New Hampshire, and concluded:

> "Even though the policy also dealt with risks in Massachusetts, where the principal office of the insured was located, the New Hampshire risk insured is to be treated as though it were insured by a separate policy and the validity of and rights under the multiple risk policy as to this risk are to be governed by the laws of this state."

*Id.* at 497, 240 A.2d at 49. We cited a particularly enlightening comment to the Restatement, now located in a revised form in the final version at § 193, comment *f,* which we will therefore quote in full:

> "A special problem is presented by multiple risk policies which insure against risks located in several states. A single policy may, for example, insure dwelling houses located in states X, Y and Z. These states may require that any fire insurance policy on buildings situated within their territory shall be in a special statutory form. If so, the single policy will usually incorporate the special statutory forms of the several states involved. Presumably, the courts would be inclined to treat such a case, at least with respect to most issues, as if it involved three policies, each insuring an individual risk. So, if the house located in state X were damaged by fire, it is thought that the court

would determine the rights and obligations of the parties under the policy, at least with respect to most issues, in accordance with the local law of X. In any event, that part of a policy which incorporates the special statutory form of a state would be construed in accordance with the rules of construction of that state."

█ Admittedly, the endorsement providing for limited uninsured motorist coverage in New Hampshire was not a statutory endorsement, and Royal makes much of this fact. However, the fact remains that the policy covered a multitude of risks located in various States. Though it is a New Jersey corporation, Purolator's business and insurance coverage extend to a number of States, including New Hampshire. The risk at issue in this particular instance was located in New Hampshire. Therefore, New Hampshire law governs. *See Diamond Intern. Corp. v. Allstate Ins. Co., supra* at 1502; *see also Baybutt Const. Corp. v. Commercial Union Ins.*, 455 A.2d 914 (Me. 1983) (rights and duties of parties to casualty insurance contract determined by local law of State which, with respect to particular issue, has the most significant relationship to the transaction and the parties); *Grand Sheet Metal Products v. Aetna Cas. & Sur.*, 500 F. Supp. 904 (D. Conn. 1980) (according to the RESTATEMENT (SECOND) OF CONFLICT OF LAWS, in multiple risk policies, applicable law is locus of each risk); *Raymond v. Monsanto Company*, 329 F. Supp. 247 (D.N.H. 1971) (where multiple risk policy is concerned, law of place of accident governs details of performance, at least where plaintiff resides therein and suit is commenced there).

II. *Applicability of RSA 264:15, I, to the Royal Policy*

Royal argues that, even if this court holds that New Hampshire choice-of-law rules require the application of substantive New Hampshire law to this case, the statute at issue, RSA 264:15, is not applicable by its terms.

RSA 264:15, I, provides as follows:

"No policy shall be issued or delivered in this state, under the provisions of RSA 264:14, with respect to a vehicle registered in this state unless coverage is provided therein or supplemental thereto at least in amounts or limits prescribed for bodily injury or death for a liability policy under this chapter, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or drivers of uninsured motor vehicles, and hit-and-run vehicles because of bodily injury, sickness or disease, including death resulting therefrom. When an

insured elects to purchase liability insurance in an amount greater than the minimum coverage required by RSA 259:61, his uninsured motorist coverage shall automatically be equal to the liability coverage elected."

Because the statute refers to policies "issued or delivered" in New Hampshire on vehicles registered in New Hampshire, Royal argues, the statute is simply inapplicable to policies like the Royal policy issued or delivered outside this State. Therefore, Royal concludes, the policy's $25,000 limitation on uninsured motorist coverage should be allowed to stand.

Concord, however, argues to the contrary, that a literal reading of the language of the statute would contravene its overall purpose. Concord cites *In re Russell C.*, 120 N.H. 260, 414 A.2d 934 (1980), and quotes the synopsis of House Bill 894 (which amended the statute to require that uninsured motorist coverage be equal to the liability limits of the policy) to the effect that the purpose of the bill was "'to increase the minimum limits of motor vehicle liability insurance for bodily injury and to provide fair and reasonable compensation to citizens of New Hampshire injured by uninsured motorists.'" Concord attempts to explain away the statute's express language by arguing that its "issued or delivered" terminology merely reflects the prevailing choice-of-law rules extant in New Hampshire at the time the bill was passed with that particular language in it. Since the choice-of-law rules for contracts were changed by this court in 1968 to conform to the modern trend in conflict-of-laws analysis, Concord argues, the "issued or delivered" language of the statute is no more than a vestige of an outmoded choice-of-law analysis, and, as such, should not be given the literal effect that it seemingly requires.

Ellis argues, to the same effect, that the Royal policy was "constructively" issued and delivered in this State because it was intended to apply to vehicles driven by citizens of New Hampshire which are also registered and garaged here: "[T]he mere fact that . . . Purolator apparently chose not to physically 'deliver' the Royal policy or a copy of it to its office in Manchester, at the time it was issued, should not operate to deprive Ms. Ellis of the protection and coverage intended by New Hampshire's uninsured motorist laws." She further maintains that Purolator's Underwriting Submission evidences an intent to be bound by the laws of the States wherein Purolator does business.

The trial court's application of RSA 264:15, I, to the Royal policy rests on two grounds: the court stated, first, that a strict application of the "issued or delivered" language of the statute would be incon-

sistent with the general purpose of the bill requiring that uninsured motorist coverage be coequal to the liability limits of a policy, and, second, that the language itself simply reflects the old *lex loci contractu* choice-of-law rule. The court stated that the attempt made in the instant policy to limit its uninsured motorist coverage to $25,000 in contravention of the statute was void, citing *Soule v. Stuyvesant Insurance Co.*, 116 N.H. 595, 364 A.2d 883 (1976). The trial court concluded:

> "In the case at hand, Purolator elected one million dollars . . . in liability coverage, but only twenty-five thousand dollars . . . per person in uninsured motorist coverage. Because the uninsured motorist provision in the Purolator policy provides coverage which is less than the liability coverage elected, the policy provides less coverage than that prescribed by RSA 264:15 (I); therefore, the uninsured motorist provision of the policy is void, the terms of the contract control, and Valerie Ellis is entitled to one million dollars . . . in uninsured motorist coverage."

We disagree with the trial court. We have held that the words of a statute are the touchstone of legislative intent, *Appeal of Locke*, 127 N.H. 403, 405, 503 A.2d 754, 755 (1985), and that the words thereof will be given their usual meaning, *see Appeal of Town of Hampton Falls*, 126 N.H. 805, 809, 498 A.2d 304, 307 (1985). In addition, we will not redraft a statute "'to make it conform to an intention not fairly expressed'" in its language. *In re Eric C.*, 124 N.H. 222, 225, 469 A.2d 1305, 1307 (1983) (quoting *In re Russell C.*, 120 N.H. at 268, 414 A.2d at 938). In this instance, the statute refers to policies "issued or delivered" in New Hampshire. The policy here was neither issued nor delivered in this State, and therefore the statute is inapplicable by its terms. To the argument that the "issued or delivered" language of the policy is a mere remnant of the old New Hampshire choice-of-law rules which were changed by *Radio Foods*, we can only answer that *Radio Foods* was decided in 1968, and the law presently codified at RSA 264:15 has been amended several times since then; had the legislature wished to alter this language of the statute, it could have done so. It has not, and we will therefore give the unambiguous language of the statute its plain meaning unless and until the legislature sees fit to change it.

Ellis maintains that the intent of the policy language was to comply with New Hampshire law, including the substantive requirement of RSA 264:15, I, that uninsured motorist coverage be equal to liability coverage. We reject this in view of the endorsement

in the Royal policy that New Hampshire uninsured motorist coverage be limited to $25,000/$50,000.

III. *Primary Versus Excess Coverage*

The most egregious source of dispute between Royal and Concord is which insurer must provide coverage to Ellis on a primary, as opposed to an excess, basis. Naturally, each insurer, at times relying upon arguments so convoluted as to defy rational analysis, claims that its insurance is excess and the other's is primary. The trial court determined that the Concord policy provided primary coverage, reasoning that since Concord's other insurance provision only operates to make Concord's coverage excess when other insurance is applicable as primary insurance, and because a Royal policy endorsement provides that if other collectible insurance exists, Royal's coverage is excess, then Concord's policy provides primary coverage because Royal's policy was not applicable as primary insurance.

On appeal, Concord argues that the trial court erred in reaching this conclusion. It focuses on the terms of the Royal policy, arguing that, if read carefully, the various provisions in the policy and endorsements reveal a consistent pattern of excess and primary coverage, leaving only one other insurance endorsement inconsistent with this pattern. A description of the alleged pattern requires that we set out first the clauses cited by Concord.

The first clause which Concord cites is in the body of the policy, and provides in part that

> "[t]he insurance afforded by this policy is primary insurance, except when stated to apply in excess of or contingent upon the absence of other insurance. When this insurance is primary and the insured has other insurance which is stated to be applicable to the loss on an excess or contingent basis, the amount of the company's liability under this policy shall not be reduced by the existence of such other insurance."

The second other insurance clause is also in the body of the policy and states: "For any covered auto you [Purolator] own this policy provides primary insurance. For any covered auto you don't own, the insurance provided by this policy is excess over any other collectible insurance."

The five other assertedly relevant provisions are in endorsements. The first, printed, endorsement states that "[t]he reference in [the preceding quoted clause] to 'other collectible insurance' applies only to other collectible uninsured motorists insurance." The second allegedly relevant endorsement, typewritten and effective as of Feb-

ruary 1, 1982, states: "IT IS HEREBY DECLARED AND AGREED THAT THE DEFINITION OF 'OWNED VEHICLES' IS AMENDED TO INCLUDE LONG TERM LEASED VEHICLES." The third endorsement, again typewritten and effective as of February 1, 1982, states in effect that the policy provides primary insurance on employee-owned automobiles "LEASED TO AND OPERATED ON BEHALF OF THE NAMED INSURED, ON A SHORT TERM BASIS."

The fourth endorsement, typewritten and effective February 1, 1982, is what Royal relies on to substantiate its claim that its policy provides only excess insurance coverage in this instance, and is therefore quoted in full:

> "IF OTHER COLLECTIBLE INSURANCE IS AVAILABLE TO THE INSURED (INCLUDING, BUT NOT LIMITED TO, AS AN ADDITIONAL INSURED UNDER ANY POLICY CARRIED BY OTHERS) COVERING A LOSS HEREUNDER, THE INSURANCE HEREUNDER SHALL BE IN EXCESS OF, AND NOT CONTRIBUTE WITH, SUCH OTHER INSURANCE. PROVIDED, HOWEVER, THAT THIS PROVISION DOES NOT APPLY WITH RESPECT TO INSURANCE PURCHASED BY THE NAMED INSURED SPECIFICALLY TO APPLY IN EXCESS OF THE LIMIT OF LIABILITY HEREUNDER."

The fifth, typed, endorsement, and seventh relevant clause, provides as follows with respect to employee vehicles (and is also dated February 1, 1982):

> "EMPLOYEE VEHICLES—POLICY SHALL INCLUDE AS INSUREDS EMPLOYEES WHILE USING EMPLOYEE–OWNED, HIRED OR OPERATED AUTOMOBILES WITHIN THE SCOPE OF THEIR EMPLOYMENT FOR A NAMED INSURED. PROVIDED, HOWEVER, THAT IF THE EMPLOYEE HAS OTHER INSURANCE AGAINST THE LOSS OR OCCURRENCE WHICH WOULD OTHERWISE BE COVERED BY THIS POLICY, THE INSURANCE UNDER THIS POLICY WITH RESPECT TO SUCH LOSS OR OCCURRENCE SHALL BE IN EXCESS OF AND NOT CONTRIBUTING WITH SUCH OTHER VALID AND COLLECTIBLE INSURANCE AVAILABLE TO THE EMPLOYEE."

Concord contends that most of these clauses, if read together, create a consistent pattern of coverage: namely, that the policy is

intended to provide primary coverage on automobiles which are owned, and excess coverage on automobiles which are not owned. Further, Concord argues that since the policy is ambiguous, the ambiguity resulting from the conflicting clauses in the policy and its endorsements must be resolved against Royal, and that the more specific clauses creating a consistent pattern of coverage govern over the more general language of the clause relied on by Royal. Therefore, according to Concord, its own other insurance clause must be given effect, rendering its uninsured motorist coverage excess over Royal's primary coverage.

Royal argues in turn primarily that Concord's other insurance clause is an excess escape clause, while its own is a pure excess provision. Concord's other insurance clause provides as follows:

> "With respect to bodily injury to an insured while occupying an automobile not owned by the named insured, the insurance . . . shall apply only as excess insurance over any other similar insurance available to such insured and applicable to such automobile as primary insurance, and this insurance shall then apply only in the amount by which the limit of liability for this coverage exceeds the applicable limit of liability of such other coverage."

Thus, Royal claims, the provision is not applicable because it becomes operative only when other insurance is available and applies as primary insurance. Therefore, since Royal's coverage in this instance is applicable only on an excess basis, then Concord's other insurance provision does not come into play. The result is that Concord provides primary coverage and Royal provides excess coverage.

In response to Concord's specific arguments regarding the construction of its policy, Royal argues that one clause—the second listed above—refers to liability, and not uninsured motorist coverage; one is perfectly consistent with its assertion that the coverage provided here is excess; and one states that for any loss covered by the policy, Royal's coverage is excess if other collectible insurance is available to the insured.

The trial court found that Concord's coverage was primary and Royal's excess, reasoning that, for Concord's other insurance provision to be applicable, the Royal policy must be primary, and it is not. In reaching its decision, the trial court gave controlling effect to the fourth endorsement quoted above. We hold that the trial court did not err in so doing. We have stated before that a policy must be construed as a whole and that our analysis will center on what the parties intended at the time the agreement was made. In addition, "an ambiguous insurance policy will be construed in favor of the

insured and against the insurer." *Trombly v. Blue Cross/Blue Shield,* 120 N.H. 764, 771, 423 A.2d 980, 985 (1980). However, contrary to Concord's argument, this does not mean that an ambiguous policy will be construed in favor of another insurer. Concord's interpretation of the policy, while clever, fails to take two things sufficiently into account: First, the purpose of an endorsement is, by definition, to change the terms of the policy; and, second, the endorsement relied on by Royal relates most clearly to the matter at issue here. We thus give effect to the other insurance endorsement in the Royal policy, thereby making that policy excess in this instance and Concord's policy primary. We also reject as without merit Concord's argument that the Financial Responsibility Act precludes the provision of only excess uninsured motorist insurance coverage by Royal. The case cited by Concord, *Liberty Mutual Insurance Co. v. Home Insurance Indemnity Co.,* 116 N.H. 12, 351 A.2d 891 (1976), deals with liability coverage and a different statute, whereas we are here concerned with uninsured motorist coverage, and that case is therefore inapposite.

## IV. *Allocation of the Tortfeasor Credit.*

The superior court split the $25,000 tortfeasor credit evenly between Royal and Concord. While acknowledging that, in this instance, such a division is "roughly equitable," Concord argues that such a division lacks a basis either in law or in fact, and argues for adoption of an alternative method of apportionment which it claims would produce an equitable result in all instances. This so-called "sliding-scale" approach works as follows: the credit would be apportioned between the insurers on the basis of how much money each of them contributes in fact to a settlement or court award. Reduced to a formula, the approach goes as follows:

$$\frac{\text{Amount Paid by Insurer}}{\text{Amount Paid by All Uninsured Motorist Insurers}} = \text{Percentage of Credit Apportioned to Insurer}$$

Thus, in this instance, the formula, as applied to Concord, yields the following result:

$$\frac{\$150,000}{\$175,000} = 86\% \text{ (rounded figure)}$$

As applied to Royal,

$$\frac{\$\ 25,000}{\$175,000} = 14\% \text{ (rounded figure)}$$

would be the result. Royal, however, argues that if its coverage is merely the $25,000 New Hampshire uninsured motorist coverage

provided by its policy, then it owes no coverage to Ellis because the tortfeasor's coverage is equal to the amount provided under the policy. However, we reject Royal's argument.

 Based on the arguments presented by the parties, we adopt the sliding-scale approach in this case and in all future cases, accepting that this methodology will produce a more nearly equitable result in all instances. Thus, Concord's share of the tortfeasor credit is $21,500 and Royal's is $3,500, and the decision of the lower court is modified accordingly.

## V. *Attorney's Fees, Costs, and Interest*

The final issue we must address is to what extent, if at all, Ellis is entitled to interest, costs, and fees. The trial court awarded interest on the judgment, court costs apportioned equally between the insurers, and attorney's fees, apportioned one-third and two-thirds as between Concord and Royal, respectively.

Concord argues that it is liable for neither costs nor attorney's fees and that interest should be awarded, if at all, on only Royal's portion of the award. Ellis, of course, argues that she is entitled to attorney's fees and interest.

With regard to costs and attorney's fees, RSA 491:22-b states that, "[i]n any action to determine coverage of an insurance policy pursuant to RSA 491:22, if the insured prevails in such action, he shall receive court costs and reasonable attorneys' fees from the insurer." Concord argues that Ellis did not prevail in this action because Concord never denied that coverage to Ellis exists under its two policies. Ellis takes the opposite position arguing that Concord's position regarding the primary/excess issue caused a delay in payment, but notes that she does not take any legal position regarding how the fees should be assessed as between the insurers.

Respecting interest, Concord argues that an agreement which it made with Ellis renders an award of interest improper. Concord states that it and Ellis agreed that the arbitration proceeding could take place before the declaratory judgment action had been filed, with the proviso that this order of proceeding would not prejudice its rights. Concord states that "[i]f Concord had not agreed to postpone filing its Declaratory Judgment action, [then] there would have been no arbiter's award until after the court had resolved the coverage dispute. . . . If there had been no arbiter's hearing, then there would be no arbiter's award on which to base an award of interest."

Ellis acknowledges the existence of an agreement between counsel. However, she argues that interest had nothing to do with it, that any argument as to what Concord would have done in the absence of

the agreement is purely speculative, and that Concord "benefited by not having to pay her while the coverage disputes were pending." She contends that she is therefore entitled to interest.

■■■ We address first the attorney's fees and costs issue. Initially, we note that Royal makes no argument on appeal regarding attorney's fees. It has therefore waived the issue. Even if it had not done so, Ellis would still be entitled to attorney's fees because Royal denied all liability in its original answer to the petition for declaratory judgment, and we have found Royal liable for $25,000. Thus, Ellis has prevailed against Royal. With regard to Concord, its position that Ellis did not prevail because Concord never denied coverage is untenable. If Concord had prevailed in its arguments, it would have had no liability to Ellis because Royal's policy with its $1,000,000 limit would be primary. While admitting that Ellis is an insured under both policies, Concord nevertheless sought to deny her coverage by claiming that Royal provided primary coverage. Our holding requiring payment of a part of the judgment by Concord to Ellis means that Ellis has prevailed as against Concord and may therefore recover costs and attorney's fees arising out of the petition filed under RSA 491:22. *See Liberty Mut. Ins. Co. v. Home Ins. Indem. Co.*, 117 N.H. 269, 371 A.2d 1171 (1977).

■■■ Our final topic of discussion concerns the trial court's award of interest on the judgment. Ellis claims that she is entitled to interest under RSA 524:1-b, which provides:

"In all other civil proceedings at law or in equity in which a verdict is rendered or a finding is made for pecuniary damages to any party, whether for personal injuries, for wrongful death, for consequential damages, for damage to property, business or reputation, for any other type of loss for which damages are recognized, there shall be added forthwith by the clerk of court to the amount of damages interest thereon from the date of the writ or the filing of the petition to the date of such verdict or finding even though such interest brings the amount of the verdict or findings beyond the maximum liability imposed by law."

Royal, again, makes no argument regarding interest. Therefore, interest will remain in effect on its portion of the award regardless of what determination is made regarding Concord. Concord claims that an alleged agreement which it had with Ellis renders inappropriate an award of interest, at least as against it. The trial court apparently found no agreement between counsel to waive interest. We likewise do not believe that the terms of the agreement reflect

an intent on the part of counsel to waive interest on the award. Therefore, Ellis is entitled to interest on the amounts paid by each insurer from the date of the award in conformity with the terms of the statute. *Hackman v. American Mut. Liab. Ins. Co.*, 110 N.H. 87, 261 A.2d 433 (1970).

*Affirmed in part; modified in part; reversed in part.*

THAYER, J., did not sit; the others concurred.