Synchronics v. Realworld                    CV-94-489-M    11/16/95

UNITED STATES DISTRICT COURT FOR THE
                         DISTRICT OF NEW HAMPSHIRE


Synchronics, Inc.,
      Plaintiff,

      v.                                      Civil No. 94-489-M

Realworld Corporation,
      Defendant.

                              O R D E R

      Synchronics, Inc. ("Synchronics") moves to have the judgment
confirming its arbitration award amended to add pre-judgment and
post-judgment interest and to define the court reporting costs to
be shared by the parties.  Realworld Corp. ("RWC") opposes the
motion to amend judgment.


I.    **BACKGROUND**

      The arbitrator's award sets forth detailed findings of fact,
citations to the record and exhibits, and also makes clear the
arbitrator's view as to the credibility of the parties'
respective witnesses.  Among other things, the arbitrator found
that: (1) Synchronics substantially performed all of its
obligations under the Settlement Agreement until RWC, acting in
bad faith, cut off the good faith negotiations required by that
Agreement; (2) "under a number of basic contract doctrines

including detrimental reliance, [RWC was] barred from benefiting from the fruits of its bad faith performance, non-performance, and refusals to continue negotiations under the Settlement Agreement"; (3) the RWC "recall" letter of October 15, 1993, was particularly egregious in that, in violation of the Settlement Agreement, it required Synchronics to effectively recall and redevelop much of its product software; (4) the credibility of past RWC management and technical personnel, all produced by Synchronics, was more reliable than the "inflammatory evidence" presented by RWC; (5) Synchronics did not owe RWC royalties on so-called "replacement programs"[1]; (6) after the Settlement Agreement was entered into, the parties reached an agreement which had the effect of carving out an exception to language in the Settlement Agreement regarding Synchronics' distribution of generic RWC software; and (7) RWC acted in bad faith when it originally refused to submit the dispute to arbitration pursuant to the terms of the Settlement Agreement.

Based upon his findings, the arbitrator awarded, inter alia, the following relief:  (1) RWC was ordered to pay Synchronics

---

[1] The term "replacement program" refers to those portions of the Synchronics software code which mirror RWC code and exist solely to allow the companies' respective software products to operate together.

$82,732 in actual damages and $100,000 in attorneys' fees; (2) the monetary award to Synchronics was offset by $6474.81 in damages which the arbitrator found Synchronics owed RWC; and (3) the parties were ordered to "share the cost of all court reporting." The award is silent as to interest due on the damages awarded Synchronics. In addition, the award does not precisely identify the court reporting costs to be shared by the parties.

On September 8, 1995, this court confirmed the arbitrator's award under the Federal Arbitration Act. 9 U.S.C. § 9; Synchronics, Inc. v. Realworld Corp., No. C-94-489-M, slip op. (D.N.H. Sept. 8, 1995). Judgment was entered on September 11, 1995. Synchronics requests that the confirmed award include: (1) a determination that RWC owes Synchronics pre-judgment and post-judgment interest on the damages awarded; and (2) a determination that RWC and Synchronics share the cost of all court reporting, including reporting associated with the litigation before the United States District Court for the Western District of Tennessee and the depositions of several RWC witnesses and employees. Having considered the parties' respective arguments, the court grants Synchronics' motion to amend the judgment in both respects.

3

## II.  DISCUSSION

### A.    Interest Due on the Award

Synchronics' primary contention in its motion to amend judgment is that RWC owes Synchronics interest on the confirmed arbitration award.  Synchronics claims that interest should be found to have accrued on the award during the period between the arbitrator's decision and this court's confirmation of his award ("pre-judgment interest") and during the period between the confirmation of the award and satisfaction of the award by RWC ("post-judgment interest").  Synchronics argues that pre-judgment interest should be awarded and calculated pursuant to New Hampshire law, which prescribes a rate of 10%.  N.H. Rev. Stat. Ann. § 336:1 (1984).  Post-judgment interest, Synchronics maintains, should be awarded and calculated according to federal law, which applies a lower, floating statutory rate.  28 U.S.C. § 1961(a).  RWC counters that under New Hampshire law Synchronics is not entitled to pre-judgment interest, and any interest due Synchronics must, instead, be predicated on federal law and calculated using the lower federal rate.

### 1.    Pre-Judgment Interest

A federal district court sitting in diversity should apply the law of the forum state when determining whether to award pre-

4

judgment interest and the rate at which such interest accrues. Newell P.R. v. Rubbermaid, Inc., 20 F.3d 15, 24 (1st Cir. 1994); Loft v. Lapidus, 936 F.2d 633, 639 (1st Cir. 1991); Weitz Co. v. Mo-Kan Carpet, Inc., 723 F.2d 1382, 1385-87 (8th Cir. 1983). Synchronics requested this court to confirm the award of the arbitrator pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 et seq. ("FAA"). While the FAA creates federal substantive law requiring parties to honor arbitration agreements, it does not confer federal question subject matter jurisdiction over actions brought pursuant to it. Southland Corp. v. Keating, 465 U.S. 1, 15 n.9 (1984); Weststar Assoc., Inc. v. Tin Metals Co., 752 F.2d 5, 7 (1st Cir. 1985); Rodriguez v. Prudential-Bache Sec., 882 F. Supp. 1202, 1207 (D.P.R. 1995). Rather, the FAA applies only when there is an independent basis for federal subject matter jurisdiction. Rodriguez, 882 F. Supp. at 1207.

Synchronics is a citizen of Tennessee, and RWC is a citizen of Delaware and New Hampshire. Based upon the complete diversity of citizenship between the parties, this court exercised subject matter jurisdiction in confirming the arbitration award. See 28 U.S.C. § 1332. Because the court was exercising its diversity jurisdiction when it entered judgment confirming the award, New Hampshire law governs the accrual of pre-judgment interest.

5

Synchronics argues that New Hampshire law requires RWC to pay interest on the arbitrator's award, at a rate of 10%, from the date the award was given to the date this court entered judgment confirming it.  RWC, on the other hand, maintains that New Hampshire law no longer provides for pre-judgment interest on confirmed arbitration awards.  It is understandable that the parties should disagree as to what New Hampshire law requires because the applicable precedent is not easily reconciled.

In 1970, the New Hampshire Supreme Court stated that pre-judgment interest accrues to an arbitration award from the date the award is announced.  Hackman v. American Mutual Liab. Ins. Co., 261 A.2d 433, 438 (N.H. 1970).  In reaching that conclusion, the court appeared to rely on N.H. Rev. Stat. Ann. § 524:1, which read, "[I]n rendering judgments for the debt or damages found by verdict, report of an auditor or otherwise, interest shall be added from the time of such finding to the rendition of judgment."  Id.; Leach v. O'Neill, 568 A.2d 1189, 1191 (N.H. 1990).  Section 524:1, however, had been repealed by the New Hampshire legislature seven years earlier, a fact that created ensuing confusion over the precedential value of Hackman.

In Ellis v. Royal Ins. Co., 530 A.2d 303 (N.H. 1987), the court, relying on Hackman, held that a party is "entitled to

interest . . . from the date of the [arbitration] award."  Id. at 312 (citing Hackman).  However, three years later, in Leach, 568 A.2d at 1191, the New Hampshire Supreme Court implicitly questioned the Hackman rule on pre-judgment interest by noting that the statute upon which Hackman seemed to rely was no longer in force.  The Leach court did not comment on the fact that section 524:1 was not in effect when Hackman was handed down either, nor did the court expressly overrule either Hackman or Ellis.  The New Hampshire Supreme Court's most recent pronouncement on the issue seems to reaffirm the vitality of the Hackman rule.  In Metropolitan Property & Liab. Ins. Co. v. Ralph, 640 A.2d 763 (N.H. 1994), the court stated, "[T]he general rule [is] that interest runs from the date of an arbitration award."  Id. at 766 (citing Hackman).

A federal court called upon to apply state law must "take state law as it finds it:  `not as it might conceivably be, some day; nor even as it should be.'"  Kassel v. Gannett Co., 875 F.2d 935, 950 (1st Cir. 1989) (quoting Plummer v. Abbott Laboratories, 568 F. Supp 920, 927 (D.R.I. 1983)).  When state law has been authoritatively interpreted by the state's highest court, this court should apply that law according to its tenor.  Kassel, 875 F.2d at 950.  Where the signposts are blurred, the federal court

7

may assume that the state court would adopt an interpretation of state law that is consistent with logic and supported by reasoned authority.  Moores v. Greenberg, 834 F.2d 1105, 1107 n.3 (1st Cir. 1987).

New Hampshire's law relative to pre-judgment interest on arbitration awards is, viewed as a whole, somewhat blurred. Nevertheless, Metropolitan, the court's most recent articulation of the state's pre-judgment interest rule, unambiguously declares:  "[T]he general rule [is] that interest runs from the date of an arbitration award."  Metropolitan, 640 A.2d at 766. It would seem apparent that in the absence of a controlling statute, the New Hampshire Supreme Court has recognized a common law basis upon which to award pre-judgment interest on confirmed arbitration awards.  Therefore, under New Hampshire law interest does accrue on an arbitration award from the date the award is handed down by the arbitrator until the date judgment is entered confirming the award.  Such interest accrues at New Hampshire's statutory rate of 10% per year.  N.H. Rev. Stat. Ann. § 336:1. Accordingly, the judgment shall be amended to include in the confirmed award interest from the date of the award until the date of confirmation.

## 2.  Post-Judgment Interest

In contrast to pre-judgment interest, post-judgment interest in a diversity case is governed by federal law, 28 U.S.C. 1961(a).  Mobil Exploration & Producing N. Am. v. Graham Royalty Ltd., 910 F.2d 504 (8th Cir. 1990); Adams-Arapahoe Joint Sch. Dist. v. Continental Ins. Co., 891 F.2d 772 (10th Cir. 1989); Chapman & Cole v. Itel Container Int'l B.V., 865 F.2d 676 (5th Cir.), cert. denied, 493 U.S. 872 (1989).  Under section 1961(a), interest is added to any civil money judgment recovered in district court; the statute applies to judgments confirming arbitration awards under the FAA.  See Northrop Corp. v. Triad Int'l Marketing S.A., 842 F.2d 1154, 1155-56 (9th Cir. 1988).  Section 1961 provides for interest from the date judgment is entered until the judgment is satisfied.  Interest accrues at a rate equal to the coupon issue yield equivalent of the average accepted auction price for the last auction of fifty-two week United States Treasury bills settled immediately prior to the date of the judgment.  28 U.S.C. § 1961(a).  Award of post-judgment interest pursuant to section 1961 is mandatory.  Cordero v. DeJesus Mendez, 922 F.2d 11, 15 (1st Cir. 1990).  Accordingly, the judgment is amended to specifically include an award of post-

judgment interest, to be calculated consistent with the provisions of 28 U.S.C. § 1961.

## B.    Reporting Costs

As part of his award, the arbitrator ordered "[e]ach party . . . [to] share the cost of all court reporting."  Award at ¶ 8(c).  Synchronics seeks to amend this court's judgment confirming the award to specifically include certain reporting costs among those to be shared by the parties.  Synchronics requests that the parties be ordered to split the reporting costs associated with litigation before the United States District Court for the Western District of Tennessee (the "Tennessee litigation") and the reporting costs for depositions taken of RWC witnesses and employees during the arbitration (the "arbitration depositions").  RWC counters that neither category of reporting costs is among the costs the arbitrator ordered be shared. Alternatively, RWC argues that the arbitrator did not have authority over costs associated with litigation in federal court.

### 1.    Costs the Arbitrator Ordered Shared

RWC first contends that the Commercial Arbitration Rules of the American Arbitration Association, which governed this arbitration, narrowly circumscribe the costs of arbitration that

are to be shared by the parties.  Rule 49 of the Commercial Arbitration Rules ("Rule 49") states:

> All other expenses of the arbitration, including . . . the cost of any proof produced at the direct request of the arbitrator, shall be borne equally by the parties, unless . . . the award assesses such expenses or any part thereof against any specified party or parties.

Rule 49.  Rule 49 may be read to establish a default rule that the expense of producing proof not directly requested by the arbitrator shall be borne by the party producing such proof. Rule 49 also states, however, that the arbitrator, in fashioning his award, may avoid the default by assessing arbitration expenses against any party or parties.  Here, the arbitrator did just that, stating, "Each party . . . shall share the cost of all court reporting . . . ."  Award ¶ 8(c).  Therefore, both the Tennessee litigation and the arbitration deposition court reporting costs claimed by Synchronics in its motion to amend judgment fall within the court reporting costs the arbitrator ordered the parties to share.

### 2.  Arbitrator's Authority to Award Costs

RWC next contends that a private arbitrator does not have authority to assess costs incurred in the course of proceedings before a United States District Court because such costs are not

11

"expenses of the arbitration."  (RWC Opp. to Synchronics' Supp. Mot. to Amend at 2.)  The Settlement Agreement between the parties provided that all disputes arising under the Agreement were to be submitted to an arbitrator for resolution.  When a dispute did arise, RWC responded by unilaterally terminating the VADA between the parties.  Synchronics then brought suit in the Federal District Court for the Western District of Tennessee seeking to enjoin RWC from terminating the VADA without first submitting the dispute to an arbitrator.  The federal court enjoined RWC from terminating the VADA pending arbitration, in accordance with the clear terms of the Settlement Agreement.  At the close of the arbitration, the arbitrator found that RWC had acted in bad faith when it refused to submit the dispute to arbitration under the terms of the Settlement Agreement, thereby requiring federal court intervention.  Award at ¶ 1(c).

The procedural history of this case strongly supports the conclusion that the court reporting costs associated with the Tennessee litigation are "costs of the arbitration."  RWC effectively forced the Tennessee litigation by refusing, absent court order, to fulfill its obligation to arbitrate under the terms of the Settlement Agreement.  Without the Tennessee litigation, the arbitration likely would not have taken place at

12

all, and the reporting costs related to the arbitration's subject matter, or to the arbitrability of the dispute itself. Accordingly, the judgment is amended to include all reporting costs Synchronics seeks among those the arbitrator ordered to be shared by the parties.

## III. CONCLUSION

The judgment is hereby amended to include pre-judgment interest to be calculated according to New Hampshire law and post-judgment interest to be calculated according to federal law. In addition, the judgment is amended to include the court reporting costs associated with the Tennessee litigation and the arbitration depositions among those the arbitrator ordered to be shared by the parties.


SO ORDERED.


_____
Steven J. McAuliffe
United States District Judge

November 16, 1995

cc:  Daniel A. Laufer, Esq.
     Michael E. Goldstein, Esq.
     Richard V. Wiebusch, Esq.

13